Official Form 417A (12/18)

*[Caption as in Form 416A, 416B, or 416D, as appropriate]*

# NOTICE OF APPEAL AND STATEMENT OF ELECTION

CASE # 16-ap-3114 /// core case 16-bk-33185

## Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):   Peter Szanto
   _____

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ☐ Plaintiff
   ☐ Defendant
   ☒ Other (describe)   Debtor / x-Def.

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ☐ Debtor
   ☐ Creditor
   ☐ Trustee
   ☐ Other (describe) _____

## Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from:   DE 571 and 572
   _____

2. State the date on which the judgment, order, or decree was entered:   11-25-2019

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Evye Szanto et al    Attorney:   Nicholas J. Henderson
   117 SW Taylor St., Suite 300
   Portland, OR 97204
   _____

2. Party: _____    Attorney: _____
   _____
   _____
   _____

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.


## Part 5: Sign below

/s/ signed electronically

_____
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Date: _____

December 9/2019

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):
_____
    11 Shore Pine, Newport Beach CA 92657
_____
_____


Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.


[**Note to inmate filers:**  If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

Below is an order of the court.

**Below is the Court's Report and Recommendation**

_____
                              PETER C. McKITTRICK
                              U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>PETER SZANTO,<br><br>     Debtor. | Bankruptcy Case<br>No. 16-33185-pcm7 |
| PETER SZANTO,<br><br>     Plaintiff,<br><br>  v.<br><br>EVYE SZANTO, VICTOR SZANTO, NICOLE<br>SZANTO, KIMBERLEY SZANTO, MARIETTE<br>SZANTO, ANTHONY SZANTO, AUSTIN<br>BELL, JOHN BARLOW, and BARBARA<br>SZANTO ALEXANDER,<br><br>     Defendants. | Adv. Proc. No. 16-3114-pcm<br><br>MEMORANDUM OPINION<br><br>REPORT AND RECOMMENDATION |

This adversary proceeding is just the latest in a long history of litigation between Peter Szanto ("Peter")[1] and members of his family,

---

[1]    Because several of the parties share a last name, for clarity in this opinion the court will refer to the parties by their first names. No disrespect is intended.  All defendants, other than John Barlow, will be collectively referred to as "defendants."

Page 1 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

originally stemming from a dispute about Peter's deceased parents'
family trust.  Over the years, Peter's claims against the family have
escalated from a probate matter challenging the amendment of the family
trust documents to remove Peter as co-trustee and beneficiary, to claims
of identity theft, fraud, conspiracy, and physical abuse of Peter's
parents, among others.  It is this court's intent that the decision in
this adversary proceeding will finally resolve the issues between Peter
and the other family members and stem the flow of litigation that has
occupied Peter, defendants, and multiple courts for years.

PROCEDURAL BACKGROUND

Peter filed his Chapter 11 case in July 2016, his third bankruptcy
case since 2013.[2]  According to Peter, his primary purpose for filing
his 2016 Chapter 11 petition in Oregon was to challenge and restructure
the two mortgages on his multi-million dollar residence in Newport
Beach, California.

A month after the Oregon Chapter 11 case was filed, Peter filed
this adversary proceeding against members of his family and John Barlow.
The complaint alleged numerous claims for relief, based on Peter's
belief that he was improperly removed as a trustee and beneficiary of
his deceased parents' family trust.  He alleged that his siblings and
their spouses and children conspired to use mental and physical abuse to
force Peter's parents to alter their estate plan to eliminate Peter as a
beneficiary.  In addition, he alleged that defendants conspired to steal
his identity and participated in financial transactions in his name.

---

[2]    Peter filed Bankruptcy Case No. 8:13-bk-11148-CB in the Central
District of California, and then Bankruptcy Case No. BK-N-13-52161-BTB
in the District of Nevada.

Page 2 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Doc. 34.

Defendants asserted three counterclaims against Peter: (1) attorney fees; (2) wrongful use of civil proceedings; and (3) injunction and vexatious litigant designation.  Doc. 66.

The court granted summary judgment to defendants on all of Peter's claims and entered a final judgment pursuant to Fed. R. Civ. P. 54(b), made applicable to this proceeding by Fed. R. Bankr. P. 7054.  Doc. 369, 370.

More than three years after this adversary proceeding was filed, the court held a trial on the counterclaims[3] that lasted three days. The court took the matter under advisement.  The following are the court's findings and conclusions, pursuant to Fed. R. Bankr. P. 7052 and Fed. R. Civ. P. 52(a).

FACTUAL BACKGROUND

Paul and Klara Szanto were the parents of Peter, Victor, Anthony, and Barbara.  Evye is Victor's wife; Mariette is Anthony's wife. Kimberley and Nicole are Peter's nieces, the adult daughters of Victor and Evye.  Austin Bell is Kimberley's husband.  John Barlow is not a family member, but provided evidence against Peter in a previous case involving the family.

Paul and Klara had a family trust.  At some time before they both

---

[3]    The trial was on the counterclaims for wrongful use of civil proceedings and injunction/vexatious litigant designation.  The first claim for relief, attorney fees, is not a separate claim for relief. Further, the "claim" for attorney fees simply asked for reciprocity, seeking attorney fees on dismissal of Peter's claims if Peter's claims against them entitled the prevailing party to recover attorney fees.  A request for attorney fees in an adversary proceeding, other than as a sanction, must be made by motion as provided in LBR 9021-1 and Fed. R. Bankr. P. 7054(b).

Page 3 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

died in the mid-2000s, they amended the trust documents to remove Peter as a co-trustee and beneficiary from the trust.  Peter concluded, based on a telephone conversation that he had with his mother before she died, that defendants were depriving her of food, water and medical treatment, and were providing Klara with mind-altering drugs, all in an attempt to get her to change the trust and remove Peter from the estate plan. Peter says that, in this telephone conversation, his mother complained that she was very, very hungry and very, very thirsty.  She did not answer his question about her dialysis, and sounded stressed.  From this information, Peter decided that his family members, who were helping to care for Klara, were abusing her for their own gain.

After his mother died, Peter started bringing actions against the family members, including against his father before his father died, claiming that the amendment to the trust to remove him as co-trustee and beneficiary was invalid, and that all of the trust assets actually belonged to him.  This is based on his allegation that, when he was a young person in the 1960s, he received an award of $250,000 for false imprisonment in California.  Doc. 34, ¶¶ 23-30.  Peter's theory is that his parents' fortune, acquired over the next 40 years, all derived from that $250,000, which they were holding in trust for him, and therefore all of their assets at their death belonged to him.[4]  Any of those assets that were distributed to the other family members were, then, actually Peter's property and should be returned to him.

---

[4]    Peter has at other times claimed instead that property Paul and Klara transferred during their lifetimes should be brought back into the family trust and distributed among him and his siblings as beneficiaries.

Page 4 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Peter also concluded that, sometime after their parents' death, the other family members had taken his identification papers that he says he had left in their parents' house, and used those papers to steal his identity and incur credit card and tax debt in his name.  He bases this conclusion on his assertion that there was some credit card debt and tax liability incurred in his name that he did not incur, that his family members had access to the parents' house where the identification papers were kept and a motive to harm Peter because of their animosity toward him, and that his two brothers look like him and so could easily obtain benefits in Peter's name.

Over more than the past decade, despite having sued his family members numerous times on various theories, Peter has never provided any credible evidence to support any of his claims.

Defendants' claim for wrongful use of civil proceedings is based on ten lawsuits Peter filed against family members or related entities over the last 14 years ("the Prior Lawsuits").  In addition, defendants rely on the filing of this adversary proceeding in support of their request for an injunction and designation of Peter as a vexatious litigant. Facts relating to the Prior Lawsuits will follow in the discussion of the claim for wrongful use of civil proceedings.

PRELIMINARY MATTERS

1.   Demand for jury trial

At the commencement of the trial, Peter demanded a jury trial.  The court denied the request for a jury trial for the reasons set out on the record at the beginning of the second day of trial.

////

Page 5 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

2.   <u>Request for default judgment against John Barlow</u>

Also at the commencement of the trial, Peter asked the court to enter a default judgment against defendant John Barlow.

On August 14, 2017, the court entered an order dismissing John Barlow, who is deceased, from this adversary proceeding.  Doc. 192.  He has not been a party to this action since 2017, and there is no basis for entering a default judgment against him.

3.   <u>Dismissal of claims by Mariette</u>

Defendant Mariette did not participate in the trial of these counterclaims, and there was no evidence submitted on her behalf. Therefore, she failed to carry her burden of proof on her claims. Mariette's claims against Peter will be dismissed.

4.   <u>Defendants' request for punitive damages</u>

During closing argument at the trial, defendants for the first time requested an award of punitive damages.  Defendants did not plead a request for punitive damages in their answer to Peter's First Amended Complaint and Counter-Claims.  <u>See</u> Doc. 66.

Although wrongful use of civil proceedings is a state law claim, the Federal Rules of Civil Procedure govern the requirements for seeking punitive damages.  Punitive damages, which are a form of special damages, must be specifically pled.  Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(g); <u>Pruett v. Erickson Air-Crane Co.</u>, 183 F.R.D. 248, 250-51 (D. Or. 1998).

Because defendants failed to plead a request for punitive damages, they are not entitled to such relief.  Therefore, the untimely request for punitive damages, made at trial, is denied.

Page 6 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

5.   <u>Defenses asserted by Peter</u>

    a.   <u>Constitutional right to redress grievances</u>

    Peter generally denied the allegations of defendants' counterclaims, and alleged as an affirmative defense that he has a constitutional right to seek redress of his grievances against defendants.  Doc. 96.

    Peter cites no authority, and the court found none, in support of the proposition that a party is constitutionally entitled to bring duplicitous or meritless lawsuits.  The court rejects this claimed defense.

    b.   <u>Statute of limitations</u>

    During trial, Peter argued that defendants' claims are barred by the statute of limitations.

    The statute of limitations is an affirmative defense that must be pled in a party's answer.  Fed. R. Bankr. P. 7008; Fed. R. Civ. P. 8(c)(1).

> "In general, a party waives any affirmative defense, such as a statute of limitations, not raised in its first responsive pleading.  This general rule, however, is subject to exceptions. In the Ninth Circuit, for example, a party may raise an affirmative defense after an initial pleading if the other party is not prejudiced."

<u>United States v. Colasanti</u>, 282 F.Supp.3d 1213, 1216–17 (D. Or. 2017) (citing <u>Rivera v. Anaya</u>, 726 F.2d 564, 566 (9th Cir. 1984)).

    Peter failed to raise the statute of limitations argument until after defendants had rested their case.  Allowing him to raise the defense at such a late date, after failing to raise it in his responsive pleading, would severely prejudice defendants.  Therefore, he failed to properly

Page 7 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

1  raise the statute of limitation defense and waived it.

2  6.  Credibility

3     The testimony of Peter and of defendants was often diametrically

4  opposed.  As a general proposition, the court finds the testimony of

5  defendants to be credible and truthful.  The court finds much of the

6  testimony of Peter to be incredible and not truthful.  The findings

7  below are based on that determination of credibility or lack thereof.

8                                  FACTS

9     Defendants' claims are based on Peter's malicious and improper

10  misuse of the civil legal system.  The evidence established the

11  following facts with regard to each of the ten lawsuits on which

12  defendants rely for their claims.

13  1.  2006 Nevada Case (Szanto v. Szanto, Case No. 2:06-cv-00048-PMP-PAL

14  (D. Nev.))

15     In 2006, Peter filed a complaint against his deceased mother,

16  Klara, Klara's estate, his father Paul, and his parents' family trust.

17  Exh. K.  The court dismissed the action for lack of subject matter

18  jurisdiction.  Id.

19  2.  2008 Minnesota Case (Szanto v. Target et al., Case No. 27-CV-08-

20  5779 (Hennepin Cnty. Minn. Dist. Ct.))

21     In 2008, Peter sued Victor, Evye, and entities owned by Victor and

22  Evye, among others, in Minnesota state court for damages allegedly

23  caused by tainted eyedrops Peter claims he was given by Victor, who is

24  an ophthalmologist.  Exh. L.

25     Peter testified that he sued Evye, who is a neurologist, because

26  she shares an office building with Victor, so he assumed they worked

Page 8 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

together.  He sued the business entities because he felt that they were alter egos of Victor and Evye, based solely on the fact that the entities were owned by Victor and Evye.

The claims against Victor were dismissed with prejudice for lack of personal jurisdiction.  Exh. M.  Although it is not entirely clear what happened to the claims against Evye, the claims against her were also dismissed.  Exh. 1006 at p.4 (Minnesota Court of Appeals stating that the trial court "dismissed claims against all defendants except Target and Altaire based on a variety of defenses, including lack of personal jurisdiction, failure to state a claim on which relief can be granted, and improper service.").

Peter claims that this case is still alive, based on the decision of the state court of appeals that partially reversed the trial court's order.  He claims that this reversal effectively began the entire litigation anew, so Victor and Evye remain parties to that case.

Peter is wrong.  The appellate court affirmed the dismissal of the claims for lack of personal jurisdiction.  Exh. 1006.  The only point on which it reversed was the trial court's denial of Peter's request to be allowed to proceed in forma pauperis.  Id.  Considering the trial court's order and the appellate court's decision, this court concludes that the claims against Victor and Evye have been dismissed, and Victor and Evye have not been reinstated as parties.

3.  2005 Phillip v. Peter Case (Szanto v. Szanto, Case No. 05 CC 08539 (D. Nev.))

In 2005, Peter's son Phillip filed an action against Peter for recovery of bar mitzvah gifts that he alleged Peter had taken.  A few

Page 9 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

years later, Peter added Victor, Anthony, Barbara, and entities owned by Victor and Evye as cross-defendants, seeking indemnification for any liability Peter might have to Phillip.  Exh. N.

Peter testified that his purpose in filing these cross-claims against defendants was to bolster his position in an upcoming settlement conference with Phillip.  He testified that he wanted to show Phillip that he was serious about moving forward, and was using the cross-claims as a bargaining chip in the settlement conference.  Peter never served the cross-complaint on the cross-defendants.  After the settlement conference, Peter voluntarily dismissed the cross-claims.  Exh. O.  The evidence establishes that Peter dismissed the claims because they no longer served as a bargaining chip in the case with Phillip.

4.   2011 MM1 Case (Szanto v. Marina Marketplace 1 et al., 11-cv-00394 (D. Nev.))

In 2011, Peter filed an action in federal district court in Nevada against entities owned by Victor, Evye, and Nicole.  Exh. T, U.  Victor and Evye were added as individual defendants in the second amended complaint.  Exh. V.  The second amended complaint asserted that Victor and Evye's entities used funds fraudulently obtained from Paul and Klara to purchase real property in Nevada, and sought damages, injunctive relief, constructive trust, and punitive damages.

Three years after the case was filed, the trial court dismissed the action with prejudice for failure to adequately serve defendants, including Victor and Evye, concluding that Peter had provided falsified service documents.  Austin Bell and John Barlow provided evidence in this case that they were with Victor in Nevada when Peter claimed Victor

Page 10 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

had been served elsewhere.  Exh. W, X.

5.  2011 Jackson County Case (Szanto v. Szanto et al., Case No. 112716E2 (Cir. Ct. Jackson Cnty.))

On the same date he filed the 2011 MM1 Case, Peter also filed a lawsuit in Jackson County, Oregon against Victor, Evye, and the Victor and Evye Szanto Revocable Trust.  Exh. R.  This complaint sought injunctive relief, constructive trust, and punitive damages.  Id.

Peter insists that, despite the fact that his name appears as plaintiff, he did not file this complaint, but instead claims that defendants filed the complaint in Peter's name against themselves. Peter provided no evidence to support this contention, other than his own testimony, which is not credible on this point.

The drafting style, font style, and signature are very similar, if not identical, to the distinctive style used in Peter's numerous other filings entered into evidence in this case.  The timing of the filing also belies Peter's claim that he did not file this action.  He filed the 2011 Jackson County Case on the same day he filed his complaint in the 2011 MM1 Case.  The allegations and theories in the two cases are very similar.  In the 2011 Jackson County case, Peter alleged that Victor and Evye used funds fraudulently obtained from Paul and Klara to purchase real property in Jackson County, Oregon.  In the 2011 MM1 Case, he claimed that Victor and Evye's entities used fraudulently obtained funds from Paul and Klara to purchase real property in Nevada.  The complaints seek similar relief.  Peter's assertion that, on the same day he admittedly filed a complaint against them in Nevada, Victor and Evye filed an action against themselves in Jackson County that is very

Page 11 - MEMORANDUM OPINION/REPORT AND RECOMMENDATION

similar in form and substance to the Nevada complaint, is simply not credible.

I conclude that Peter filed the 2011 Jackson County Case.

The Jackson County court entered a General Judgment of Dismissal on in February 2012, for lack of prosecution. Exh. S. Peter moved to set aside the dismissal. Exh. 1012. In March 2012, the court entered an order requiring Peter to serve Victor and Evye with its order and the motion to set aside within 28 days, after which the court would set a hearing. Exh. 1013. The order giving Peter 28 days to properly serve Victor and Evye is the final entry on the docket for the case. Exh. 1012.

Peter claims that this case remains ongoing. Victor testified that he was never served with the trial court's March 2012 order, or any documents related to the case, and learned of this litigation only after retaining counsel to defend him in this adversary proceeding.

The evidence shows that the case has been dismissed against all defendants and has been closed.

6. <u>2012 Oregon District Court Case</u> (<u>Szanto v. Szanto et al.</u>, Case No. 12-cv-0050-PA (D. Or.))

In 2012, Peter removed to Oregon District Court an action that he had filed in Los Angeles County, California against Victor, Anthony, and Barbara, among others, alleging eleven causes of action for, among other claims, malicious prosecution, conspiracy, intentional infliction of emotional distress, and identity theft. Exh. CCC at Exh. B. Peter testified that he removed the action to Oregon District Court because he had discovered that some trust assets were being used improperly to buy

Page 12 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

real estate in Medford, Oregon.

It is unclear what happened to this case.  Peter stated in his answers to interrogatories that the case was dismissed by the Los Angeles County court (presumably after remand) because he was unable to provide a bond.  Exh. HH at p.9.

7.  2013 California Bankruptcy Adversary Proceeding (Szanto v. Szanto et al., Adv. No. 13-ap-1167-B (Bankr. C.D. Cal.))

In 2013, after Peter bankruptcy in California, he filed an adversary proceeding in the California bankruptcy court, seeking damages from Victor and Anthony for fraud, fraudulent conveyance, and fraudulent concealment.  Exh. Y.  Peter never served the complaint on Victor or Anthony.  When the main bankruptcy case was dismissed, the bankruptcy court dismissed the adversary proceeding.  Exh. Z.

8.  2013 Nevada Bankruptcy Adversary Proceeding (Szanto v. Szanto et al., Adv. No. 13-5038-gwz (Bankr. D. Nev.))

Also in 2013, Peter filed an adversary proceeding against Victor and Anthony in Nevada bankruptcy court, where he had filed a second bankruptcy petition.  Exh. AA.  He alleged claims similar to those alleged in the 2013 California Bankruptcy Adversary Proceeding.

The court entered defaults against the defendants.  They then sought dismissal, saying that they had not been properly served.  The court dismissed the action without prejudice to refiling, based on its determination that the complaint failed to state a claim for relief.  Exh. BB.  Peter never sought to refile the complaint.

9.  2015 Persolve Case (Szanto v. Persolve et al., Case No. 15-cv-241-AG-DFM (C.D. Cal.))

Page 13 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

1    In 2015, Peter filed an action against Victor and Anthony, among
2  others, in the Central District of California, alleging identity theft,
3  fraud, fraudulent transfer, and intentional infliction of emotional
4  distress.  Exh. CC.
5    The court entered a default against Anthony.  Exh. DD.  After
6  Anthony filed a motion to set aside the default, the court entered an
7  order to show cause why the case should not be dismissed for lack of
8  subject matter jurisdiction.  <u>Id.</u>  In its order setting aside the
9  default and dismissing the case, the court found that, although Peter
10  had "improperly and inefficiently filed four documents totaling 132
11  pages . . . the Court . . . received nothing persuasive regarding its
12  exercise of subject matter jurisdiction." <u>Id.</u> at p.3.  It dismissed the
13  case with prejudice for lack of subject matter jurisdiction.  <u>Id.</u> at
14  p.8.
15  10.  <u>2016 Oregon Bankruptcy Adversary Proceeding</u> (<u>Szanto v. Szanto</u>, Adv.
16  No. 16-3114-pcm (Bankr. D. Or.))[5]
17    Shortly after Peter filed his Chapter 11 case in this court, he
18  commenced this adversary proceeding against all of the named defendants.
19  He included numerous claims, including, among others, identity theft,
20  conspiracy, fraud, and breach of fiduciary duty.  Defendants
21  counterclaimed for wrongful use of civil proceedings and requested that
22  Peter be declared a vexatious litigant.
23    The court granted summary judgment to defendants on all of Peter's
24
25  [5]    Although defendants do not rely on this adversary proceeding to
support their claim for wrongful use of civil proceedings, the court
26  will discuss it briefly, as it pertains to the claim for
injunction/vexatious litigant designation, and completes the picture of
the litigation among these parties.

Page 14 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

claims, based on failure to provide evidence to support the claims or statute of limitations. Peter has appealed the summary judgment order. The appeal is pending.

11. <u>2017 Susan Domestic Violence Case</u> (<u>Susan Szanto v. Victor Szanto</u>, Case No. 17V001202 (Super. Ct. Cal. Orange Cnty.))

In 2017, a domestic violence case was filed against Victor in Orange County, California, purportedly by Peter's wife, Susan. Exh. KK. It sought a restraining order in favor of Susan against Victor. Evidence presented at the trial in this adversary proceeding shows that, despite the form of the complaint, the complaint was in fact written and filed by Peter. Pursuant to FRE 901(b), the court finds that key distinctive characteristics of the handwriting on the temporary restraining order form, Exh. KK, are the same as on other authenticated samples of Peter's handwriting, such as the handwritten pleading filed in the 2005 Phillip v. Peter Case, Exh. N. Therefore, the court concludes that this complaint against Victor was, in reality, filed by Peter.

The case was dismissed without prejudice to refile after Susan failed to appear for the hearing on the restraining order. Exh. LL.

CLAIM FOR WRONGFUL USE OF CIVIL PROCEEDINGS

1. <u>Preliminary Matters</u>

Defendants conceded that they are not seeking damages for wrongful use of civil proceedings based on the filing of this adversary proceeding. Nevertheless, the court wants to make clear that Peter's filing of this lawsuit does not provide a basis for a wrongful use of civil proceedings claim in this case. Under Oregon law, a separate

Page 15 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

action for wrongful use of civil proceedings must be filed, rather than asserting such a claim in the lawsuit on which the claim is based.  ORS 31.230(3).  Therefore, in this action, defendants cannot recover any damages resulting from this adversary proceeding against them, despite the fact that the claims were adjudicated in their favor on summary judgment.

Second, defendants acknowledged at trial that three defendants, Austin, Kimberley, and Nicole, were never named as defendants in the Prior Lawsuits.  Therefore, there is no basis for a claim of damages for wrongful use of civil proceedings for any of those defendants.  The counterclaims of Austin, Kimberley, and Nicole for wrongful use of civil proceedings will be dismissed.  For purposes of the discussion of this claim, all references to "defendants" should be read to exclude Austin, Kimberley, and Nicole.

2.   Legal Standard

"Under Oregon law, the elements of a claim for wrongful initiation of a civil proceeding are (1) commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) absence of probable cause to prosecute the action; (4) existence of malice; and (5) damages."

SPS of Or., Inc. v. GDH, LLC, 258 Or. App. 210, 218 (2013).[6]

a.   Commencement and prosecution by Peter of a judicial proceeding

---

[6]   No party argues that California law applies to this claim.  In any event, as explained in the Memorandum Opinion on Summary Judgment, Doc. 368, the elements of this claim are very similar in Oregon and California.

In addition, because this is a counterclaim, the posture of the parties is flipped, so that the "plaintiff" in this claim is actually defendants, and the "defendant" in this claim is Peter.

Page 16 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

1  against the defendants

2      "[A] claim for wrongful initiation of civil proceedings, like a

3  claim for malicious prosecution, can be based on a theory of active

4  participation in a proceeding and is not limited to direct initiation or

5  prosecution of a civil proceeding." Checkley v. Boyd, 170 Or. App. 721,

6  736 (2000). "[A]n active participant is one who sets the machinery of

7  the law in motion, whether he acts in his own name or in that of a third

8  person, or whether the proceedings are brought to enforce a claim of his

9  own or that of a third person." Id. at 737 (internal citations

10 omitted).

11     There is no dispute that Peter either initiated each of the

12 following actions or brought cross-claims in them:

13         2006 Nevada Case
           2008 Minnesota Case
14         2005 Phillip v. Peter Case
           2011 MM1 Case
15         2012 Oregon District Court Case
           2013 California Bankruptcy Adversary Proceeding
16         2013 Nevada Bankruptcy Adversary Proceeding
           2015 Persolve Case
17

18     As for the 2011 Jackson County case, Peter denies that he filed

19 this complaint, instead alleging that defendants filed it in his name

20 against themselves. As explained above, based on the testimony and

21 documentary evidence, the court concludes that Peter in fact filed the

22 complaint in Jackson County.

23     As for the 2017 Susan Domestic Violence Case, the court concludes

24 that this case also was filed by Peter, for the reasons explained above.

25     Therefore, the court finds that all of the Prior Lawsuits alleged

26 to have been filed by Peter were in fact filed by him.

Page 17 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

This element also requires that the judicial proceeding was brought against defendants.  See Clausen v. Carstens, 83 Or. App. 112, 116 (1986).  Claims against a third party, even if they affect or generate a cost to a plaintiff (here – defendants), do not satisfy this requirement.  Id.  If a claim is not prosecuted against the claimant, such claim cannot be prosecuted maliciously against such claimant.  Id.

None of the defendants was a party to the 2006 Nevada Case.  Although Victor testified that he assisted his father with the litigation, Victor was not a defendant in the case.  Therefore, this case cannot support a claim for wrongful use of civil proceedings.

Peter named Victor, Evye, Anthony, and Barbara as defendants or cross-defendants in one or more of the remaining Prior Lawsuits.  Therefore, all of the remaining Prior Lawsuits were against some or all defendants.

b.  Termination of the proceeding in the claimant's favor

An action is terminated in the favor of the person against whom it was brought by

"'(1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them.'"

Portland Trailer & Equip. v. A-1 Freeman Moving & Storage, 182 Or. App. 347, 356-57 (2002) (quoting Restatement (Second) of Torts § 674, comment j (1977)).

"[T]he voluntary dismissal of an underlying action before a trial on the merits is favorable to the defendant if it reflects adversely on the merits of the underlying action.  That determination does not necessarily depend on whether the dismissal was with, or without, prejudice.  Instead, it requires an examination of the circumstances resulting in the termination."

Page 18 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Id. at 356.

> "If the action was voluntarily terminated by the plaintiff, a finder of fact might determine that the termination was an admission that the claim lacked merit.  However, the abandonment also might reflect financial impecunity or a determination that the potential recovery did not justify the cost of litigation."

Id. at 357.

        (i)         2008 Minnesota Case

As explained above, in 2008, the Minnesota court dismissed the claims against Victor and Evye for lack of personal jurisdiction, failure to state a claim on which relief can be granted, and improper service.  This is a termination in favor of Victor and Evye.

        (ii)        2005 Phillip v. Peter Case

Peter voluntarily dismissed his cross-claims against Victor, Anthony, and Barbara after he settled with Phillip.  Peter admitted that he filed the claims against defendants to obtain bargaining power in his attempts to settle with Phillip.  This is an admission that the claims lacked merit, and constitutes a termination in favor of Victor, Anthony, and Barbara.

        (iii)       2011 MM1 Case

The trial court dismissed Peter's claims against Victor and Evye for failure to serve them, after Peter had provided the court with falsified service documents.  This is a termination for failure to prosecute, constituting termination in favor of Victor and Evye.

        (iv)       2011 Jackson County Case

The evidence about the status of this case is unclear.  There is an order of dismissal, an order vacating that dismissal and giving Peter

Page 19 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

time to serve the order vacating dismissal, and no further indication of the status of the case.  Defendants have failed to establish that this action was terminated in their favor.

### (v)    2012 Oregon District Court Case

It is unclear what happened to this case.  Defendants did not provide any evidence that it was terminated in their favor.  Peter testified that the case was dismissed when he failed to provide a bond. This dismissal does not reflect on the merits of the underlying action. Defendants have not established that this action was terminated in their favor.

### (vi)    2013 California Bankruptcy Adversary Proceeding

This complaint was dismissed before it was served on Victor and Anthony, because the main bankruptcy case had been dismissed.

A bankruptcy court's dismissal of an adversary proceeding following dismissal of the underlying bankruptcy case does not necessarily reflect negatively on the merits of the adversary proceeding itself.  In considering whether to keep an adversary proceeding open when the underlying bankruptcy case is dismissed, the court must consider judicial economy, convenience, fairness and comity.  In re Carraher, 971 F.2d 327, 328 (9th Cir. 1992).  The mere fact that this adversary proceeding was dismissed when the main bankruptcy case was closed is insufficient to show that the litigation was resolved in defendants' favor.

### (vii)    2013 Nevada Bankruptcy Adversary Proceeding

The bankruptcy court dismissed this adversary proceeding for failure to state a claim, concluding that Peter's complaint failed to

Page 20 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

meet even minimal pleading standards under the federal civil procedure rules.  It did not address defendants' argument that they had not been properly served, but dismissed without prejudice for Peter to refile.  Exh. BB.  Peter never sought to refile the complaint.

The fact that an adversary proceeding was dismissed without prejudice is not dispositive on the issue of whether the action was resolved in favor of the claimant.  Portland Trailer & Equip., Inc., 182 Or. App. at 356.  Here, the bankruptcy court noted that the claim did not suffer from a mere technical deficiency, but instead failed to allege facts to support a plausible claim.  Peter declined to remedy the deficiencies in the complaint and refile it.

The bankruptcy court's determination that the complaint was facially inadequate and Peter's decision to abandon the action both reflect adversely on the merits of the underlying case.  This action was terminated in defendants' favor.

(viii)   2015 Persolve Case

This case was dismissed for lack of subject matter jurisdiction after Peter failed, despite voluminous filings on the issue, to establish that the court had subject matter jurisdiction.  Peter was given additional time for further briefing, yet he failed to file any further briefing or seek to amend the complaint to cure the jurisdictional defects.  The court's dismissal without leave to amend reflects on the merits of the case, and shows that the proceeding was terminated in defendants' favor.

(ix)   2017 Susan Domestic Violence Case

This case was dismissed without prejudice after Susan failed to

Page 21 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

appear for a hearing on the requested restraining order.

Ordinarily, the court would be extremely hesitant to find that failure to appear at a domestic violence restraining order hearing could form the basis of a wrongful use of civil proceedings claim.  However, Susan's failure to appear, in addition to the fact that the case was actually filed by Peter, leads to the conclusion that Susan's failure to appear was either because she was unaware of the action, having failed to file it on her own behalf, or was a result of Peter's determination not to pursue this litigation against Victor.

In either event, under the very unusual circumstances surrounding the filing of this action, the court finds that Peter's failure to pursue this action is an admission that the claim lacked merit. Therefore, the dismissal of the action reflects adversely on the merits of the case.  This action was terminated in Victor's favor.

c.   Absence of probable cause to prosecute the action

For the proceedings that were terminated in defendants' favor, defendants also need to show that Peter lacked probable cause to prosecute the actions.  The six actions remaining to be considered are:

    2008 Minnesota Case
    2005 Phillip v. Peter Case
    2011 MM1 Case
    2013 Nevada Bankruptcy Adversary Proceeding
    2015 Persolve Case
    2017 Susan Domestic Violence Case

"'Probable cause,' in the wrongful-initiation context, means that the person initiating the civil action 'reasonably believes' that he or she has a good chance of prevailing - that is, he or she has an objectively reasonable, subjective belief that the claim has merit."

Page 22 - MEMORANDUM OPINION/REPORT AND RECOMMENDATION

SPS of Or., 258 Or. App. at 218.  To show probable cause, defendants must demonstrate either that the person initiating the claim lacked a belief that there was a good chance of establishing the claim in court or that the belief was objectively unreasonable.  Gunter v. The Guardian Press Found., Inc., 2006 WL 1030182, at *5 (D. Or. Mar. 28, 2006).

Under either of those standards, defendants carried their burden of proof with regard to the six remaining Prior Lawsuits.

The evidence presented at trial demonstrated that Peter did not have a reasonable belief that he would prevail.  His testimony showed that he was often unconcerned with the legal merits of his case, as demonstrated by his testimony and legal tactics.

Peter is not an ordinary pro se litigant.  Peter testified that he graduated from law school.  He has demonstrated through his voluminous filings in this court that he possesses a sophisticated understanding of the federal and local rules (although his understanding is not always correct) and an ability to conduct legal research and perform legal analysis.  In other words, Peter had the ability to determine whether the claims he was filing had any merit.

Despite that ability, the evidence presented at trial showed numerous instances in which Peter did not concern himself with the merits of his claims.  He testified that his primary interest in filing the various lawsuits against defendants was to achieve "family love, peace, and harmony."  He further testified that the lawsuits were intended to be a wake-up call that the family had a problem and that he was not happy with the way things were going.

He specifically testified that he filed the cross-claims against

Page 23 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

defendants in the 2005 Phillip v. Peter Case to posture for settlement with Phillip, that is, to show Phillip that he was serious about moving forward.  He testified that his goal in filing all of the other Prior Lawsuits was to get defendants to settle with him, perhaps over dinner and a bottle of wine.

The documentary evidence further supports this conclusion.  Despite Peter's legal acumen and numerous opportunities to craft and recraft his complaints to meet the minimum legal standards to state facially meritorious claims, Peter failed to do so at any time.  None of the numerous claims against any of the defendants proceeded beyond the motion to dismiss phase of any case, until this adversary proceeding.

Additionally, some of the Prior Lawsuits contain allegations of contact between Peter and defendants that are simply not credible and which the court finds are false.  With regard to the allegations of identity theft in the 2015 Persolve Case, which were repeated in other Prior Lawsuits, Peter testified that he personally interacted with Anthony and Victor and witnessed them rifling through his documents. Peter alleged in the 2008 Minnesota Case, and again in the 2011 MM1 Case, that Victor and Evye supplied him with tainted eye drops.  Exh. L, X.  In the 2017 Susan Domestic Violence Case, he alleged that Victor personally confronted Susan with a firearm in 2017.

In contrast, each of the defendants testified, credibly, that they had had minimal or no contact with Peter over the course of their adult lives.  Peter's siblings, Victor, Anthony, and Barbara, had not seen Peter in decades.  Specifically, Victor testified that he had not seen Peter for approximately forty years until Peter deposed him in this

Page 24 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

case.  Evye credibly testified that she had never seen or had contact with Peter before this case.

I find that Peter's testimony that he witnessed Anthony and Victor taking his personal papers from his room or office at the family home on Baywood Drive is false.

Peter testified that the allegations he made in the 2008 Minnesota Case, that Victor examined him at Victor's home and gave Peter eye drops on February 1, 2006, were accurate.  Peter testified that the exam took place on a Saturday.  Victor denied that the meeting took place. Peter's testimony was false that he visited Victor at Victor's home and was examined by Victor at that time.  Victor's testimony was credible; Peter's was not.  In addition, February 1 of 2006 was a Wednesday, not a Saturday.

Peter gave conflicting testimony about Evye's involvement in the eye drops scandal.  He testified during this trial that Victor was the only one present when Victor gave him the eye drops.  Yet he sued Evye, a neurologist, for medical malpractice in the 2008 Minnesota Case.  If Peter's testimony was true, and Victor was the only one home when Peter was examined in Victor's home, there could be no factual basis for suing Evye.  In fact, Peter testified in this trial that he named her in the lawsuit because Evye has an office in the same office building as Victor, so he thought that she must be involved in Victor's alleged provision of tainted eye drops.  There is absolutely no evidence to support a finding of probable cause to include Evye in the 2008 Minnesota Case.

As for the allegation in the 2017 Susan Domestic Violence Case that

Page 25 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Victor personally confronted Susan with a firearm, Victor credibly testified that he never confronted Susan.  In fact, he testified, and the court believes him, that he has never met Susan.

Peter filed claims against defendants relying on facts he knew at the time to be false.  Under those circumstances, he could not have possessed an objectively reasonable, subjective belief that his claim had merit.  He testified at trial that he "guessed" about whether some of the most important alleged conduct of defendants occurred.  Peter tried to retreat from this testimony when he realized the use of the word "guessed" was probably damning, but the damage had been done.

Even if Peter had a subjective belief that his allegations were true, his beliefs were not objectively reasonable.  His allegations are based almost exclusively on wild suppositions with no basis in fact.  He summed up the basis for the allegations as "quintessential detective analysis."  For example, according to Peter, defendants had motive and opportunity; a motive to financially and emotionally distract Peter from pursuing claims against the family trust, and opportunity because of Victor and Anthony's access to Peter's records at the family home.  His only evidence in support of his claims against Victor and Anthony with regard to allegations of stealing his identification documents was his testimony of watching them take some of his papers from the family home.  As explained above, Peter's testimony about that incident is not credible in light of the credible testimony from Victor and Anthony that they had sparse if any contact with Peter and that they never took any of his documents from the family home.

Defendants have established that Peter lacked probable cause to

Page 26 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

prosecute the remaining Prior Lawsuits.

    d.   Existence of malice

"Malice," in the context of a wrongful initiation claim, is "the existence of a primary purpose other than that of securing an adjudication of the claim." Erlandson v. Pullen, 45 Or. App. 467, 477 (1980). The fact finder may permissibly infer in most cases that an action brought in the absence of probable cause is brought with malice. Alvarez v. Retail Credit Ass'n, 234 Or. 255, 263-65 (1963); SPS of Or., 258 Or. App. at 219.

As described in the preceding section, the evidence shows that Peter did not file the Prior Lawsuits with the intent to resolve legitimate legal disputes. Instead, he appears to have engaged in litigation for the primary purpose of forcing his siblings and their families to interact with him. The court cannot conceive a more improper purpose of a lawsuit than to force the opposing party into an unwanted relationship. Peter testified numerous times and at substantial length that his primary aim in filing the Prior Lawsuits was precisely that. Therefore, the court concludes that the remaining Prior Lawsuits were filed with malice.

    e.   Damages

Defendants seek two types of damages based on the Prior Lawsuits: attorney fees and damages for emotional distress.

A claim for wrongful use of civil proceedings does not require proof of special injury, "beyond the expense and other consequences normally associated with defending against unfounded legal claims." ORS 31.230(1).

Page 27 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

"When the essential elements of a cause of action for wrongful civil proceedings have been established, the plaintiff is entitled to recover, inter alia, reasonable attorney fees; costs incurred in defending against the proceedings; and 'any other loss of a pecuniary character that [the plaintiff can prove] resulted from the initiation of civil proceedings.'"

Liberty Nat. Prod., Inc. v. Hoffman, 2012 WL 1203979 at *8 (D. Or. Apr. 11, 2012)(quoting Restatement (Second) of Torts § 681, comments d and e). Emotional distress damages are recoverable. Lee v. Mitchell, 152 Or. App. 159, 180 (1998).

(i)   Attorney fees

In support of their request for damages in the form of attorney fees incurred in the Prior Lawsuits, defendants presented a number of documents related to attorney fees, which they argue represent a portion of the legal expenses they have incurred as a result of the litigation filed against them.

As explained above, not all of the Prior Lawsuits give rise to a right of recovery.  For example, Exhibits A and G appear to relate either to the 2006 Nevada Case involving the Szanto parents' trust or to other matters involving the trust.  Defendants were not involved as individuals in litigation over those trust matters.  Exhibit F appears to relate to services provided to Daha Investments, which is an entity related to defendants but is not named as a defendant in this adversary proceeding.

In addition, defendants submitted insufficient evidence to establish the amount of attorney fees paid for any of the Prior Lawsuits.  Defendants' exhibits primarily were billing or account summaries, which failed to include any detail from which it could be determined what services were the basis for the charges shown on the

Page 28 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

summaries.  For example, Victor testified that Exhibit C related to
California matters that began in 2006, but the exhibit is simply a
summary of payments made, showing neither the services rendered nor who
made the payments.  Exhibit B apparently relates to the Nevada
bankruptcy case, but the evidence does not establish whether defendants
paid these bills.  Exhibit E includes a list of services provided to
Victor and Evye, and Victor testified that he paid for these services,
but it is not clear whether these services relate to any of the Prior
Lawsuits.  Exhibit D shows services provided to Victor and Evye,
apparently for the Marina Marketplace 2 LLC that they own.  Although
Victor testified that he paid for these services, it is not clear
whether he paid those bills in his capacity as an individual or on
behalf of Marina Marketplace 2 LLC, which is not a defendant in this
adversary proceeding.

I also note that there was testimony that defendants were not even
aware that some of the Prior Lawsuits had been filed until they were
discovered during the course of this adversary proceeding.  As a result,
defendants incurred no attorney fees in connection with those cases.

The court has no doubt that defendants spent significant funds over
the years defending these cases.  But the exhibits and testimony
presented at trial simply did not provide enough detail or certainty to
form a basis for determining what amount was incurred in defending
against the Prior Lawsuits.

Therefore, defendants did not carry their burden to demonstrate
that the attorney fees represented in Exhibits A-G are compensable
damages.

Page 29 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

1          (ii) Emotional distress damages

2     Defendants seek damages for the emotional distress they allege they

3     suffered as a result of the Prior Lawsuits.

4     The allegations Peter made against defendants are heinous.  Peter's

5     allegations include such behavior as withholding food and water from

6     Klara to induce her to change her estate plan.  He has accused Victor

7     and Evye, who are both licensed physicians, of giving Klara mind-

8     altering drugs.  He has asserted that Victor and Anthony "hoodwinked"

9     the California motor vehicles department into issuing a falsified

10    drivers license in Peter's name, which Victor and Anthony then used to

11    steal Peter's identity and obtain credit in his name.  Peter has never

12    presented any evidence to support any of those claims, basing them

13    solely on his own speculation and guesswork.

14    Peter admitted at trial that his mother, Klara, never told him

15    anyone was withholding food and water from her or mistreating her in any

16    way, much less that Victor or any of the other defendants were

17    responsible.[7]

18    Victor, Evye, Anthony, and Barbara all testified credibly and

19    persuasively to their humiliation at having to face allegations of

20    inhumane, abusive treatment of Klara.  Victor testified that he faces

21    each day in fear, from both a physical and a legal standpoint, because

22    Peter has been able to use the legal system as a tool to terrorize and

23    _____

[7]    Peter was elusive in his testimony.  After testifying at his

24    deposition and at the trial that his mother never told him that she had
      been deprived of food or water, he refused to answer "yes" or "no" to a

25    question about whether Klara had ever told him that she had been refused
      food or water.  He testified that she said she was very hungry and did

26    not sound right during a telephone call he had with her while he was
      hospitalized in Israel.

Page 30 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

harass him and his family.  He further testified that he felt like he
was a victim of terrorism and was being extorted by Peter.  Victor
testified that he was distraught over the claims of medical malpractice
made in the 2008 Minnesota Case.

Evye testified about her anguish over the Prior Lawsuits and the
allegations of abuse of Victor's parents, as well as the anguish she
felt over allegations of medical malpractice made in the 2008 Minnesota
Case.  She said that Peter's actions were very disturbing and were
damaging to her soul.  She is fearful of what lawsuit will come next.

Barbara testified that she was horrified by the allegations of
abuse of her parents, because she is not the kind of person to do any of
what Peter claimed she had done.  She further testified that she was
just horrified and dumbstruck and cried a lot.  She is very scared, not
knowing from day to day if there is going to be another lawsuit.  She
lives under stress all of the time, because she is worried about what is
coming next.

Anthony testified that he has lost confidence in the legal system.
He is scared about what Peter is capable of, and he fears Peter a great
deal.  Anthony testified that he has serious medical issues that he is
trying to deal with, and that the cumulative stress of the Prior
Lawsuits has made everything a lot worse for him.

In summary, Victor, Evye, Anthony, and Barbara all easily carried
their burden to show that they have suffered emotional damage as a
result of Peter's incessant filing of lawsuits against them.  Victor and
Evye have had to deal with the largest number of legal actions against
them, and have been the most frequent target of Peter's harassment.

Page 31 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

1    Placing a monetary value on the emotional distress suffered by
2    defendants in these types of cases is difficult.  There is no magic
3    formula for determining a proper sum.  Awards for emotional distress are
4    highly subjective and depend to a large part on the court's assessment
5    of the demeanor of the witnesses.  Fox v. GMC, 247 F.3d 169, 180 (4th
6    Cir. 2001); Baker v. John Morrell & Co., 266 F.Supp.2d 909, 948 (N.D.
7    Iowa 2003).

8    I conclude that Victor, Evye, Anthony, and Barbara have established
9    that they are entitled to awards of damages for the emotional toll the
10   Prior Lawsuits have had on them.  In determining the appropriate amounts
11   to award, the court has surveyed numerous Oregon cases awarding
12   emotional distress damages, as well as considered the court's own
13   experience in awarding such damages in cases such as contempt actions
14   for violations of the automatic stay or the discharge injunction.  The
15   court has considered the demeanor of the witnesses, and finds their fear
16   and anguish is genuine.

17   These defendants' fear and anguish is not fleeting, it is
18   significant, and it is reasonable, in light of the number of actions
19   Peter has filed against them and the types of allegations he has made
20   against them, all without any evidentiary basis.  Taking into account
21   the number of Prior Lawsuits filed against each of these defendants and
22   their testimony about how those lawsuits have affected them, the
23   appropriate amount of damages for emotional distress for each defendant
24   is as follows.

25   Victor will be awarded $165,000, made up of $50,000 for the 2008
26   Minnesota Case, $25,000 for the 2005 Phillip v. Peter Case, $25,000 for

Page 32 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

the 2011 MM1 Case, $25,000 for the 2013 Nevada Bankruptcy Adversary Proceeding, $30,000 for the 2015 Persolve Case, and $10,000 for the 2017 Susan Domestic Violence Case.

Evye will be awarded $105,000, made up of $50,000 for the 2008 Minnesota Case, $25,000 for the 2011 MM1 Case, and $30,000 for the 2015 Persolve Case.

Anthony will be awarded $50,000, made up of $25,000 for the 2005 Phillip v. Peter Case and $25,000 for the 2013 Nevada Bankruptcy Adversary Proceeding.

Barbara will be awarded $25,000 for the 2005 Phillip v. Peter Case.

REQUEST FOR INJUNCTION AND VEXATIOUS LITIGANT DESIGNATION

All defendants seek an injunction limiting Peter from filing any further lawsuits against defendants or any of their affiliated entities in bankruptcy courts and district courts nationwide.[8]

As a preliminary matter, this court does not believe it has the authority to limit or prohibit Peter from asserting claims in the district courts. Defendants have not cited any authority, nor has the court found any, that would allow a bankruptcy court to issue an injunction or pre-filing order that would apply to actions filed in a

---

[8]    Defendants request "entry of an order requiring Plaintiff to obtain pre-filing permission from this Court before filing any subsequent suit against any of the Defendants in this case[,]" Doc. 66 at ¶ 174, and "entry of an order requiring Plaintiff to obtain pre-filing permission, from this Court or any other federal court, prior to filing any subsequent suit that pertains to any of the Defendants, Plaintiff's purported interest in any assets of the Defendants, Paul Szanto, Klara Szanto, and any trusts related to the foregoing." Id. at ¶ 175. Because the second request appears to encompass all relief contemplated by the first, the court will only address the second.

Page 33 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

district court.  However, the court does have the authority to make

proposed findings of fact and conclusions of law, which may be

transmitted to the district court with a recommendation that the

district court adopt the findings and conclusions.  See 28 U.S.C. §

157(c)(1); Fed. R. Bankr. P. 9033.

Federal courts have inherent power "to regulate the activities of

abusive litigants by imposing carefully tailored restrictions under the

appropriate circumstances."  De Long v. Hennessey, 912 F.2d 1144, 1147

(9th Cir. 1990) (internal quotations omitted).  Pursuant to the All

Writs Act, 28 U.S.C. § 1651(a), and section 105 of the Bankruptcy Code,

11 U.S.C. § 105, bankruptcy courts possess the power to regulate

vexatious litigation.  Stanwyck v. Bogen, 450 B.R. 181, 200 (Bankr. C.D.

Cal. 2011); Goodman v. Cal. Portland Cement Co., 420 B.R. 1, 11 (Bankr.

D. Ariz. 2009).  "This power includes the power to issue restrictive

pre-filing orders against vexatious litigants."  In re Bertran, 2018 WL

1704306, *5 (9th Cir. BAP Apr. 6, 2018) (unpublished).

"Because such orders constrain a litigant's fundamental right of

access to the courts . . . the court must" provide notice and make

certain specific findings.  Id. at *6.  The court must:

> "'(1) give litigants notice and an opportunity to oppose the
> order before it is entered; (2) compile an adequate record for
> appellate review, including a listing of all the cases and
> motions that led the district court to conclude that a
> vexatious litigant order was needed; (3) make substantive
> findings of frivolousness or harassment; and (4) tailor the
> order narrowly so as to closely fit the specific vice
> encountered.'"

Id. (quoting Ringgold-Lockhart v. Cnty. of L.A., 761 F.3d 1057, 1062

(9th Cir. 2014)).

Page 34 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

The Ninth Circuit has identified five factors to determine whether the litigant's actions were sufficiently frivolous and the remedial action sufficiently narrow:

> "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties."

Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007) (adopting factors in Safir v. U.S. Lines, Inc., 792 F.2d 19 (2nd Cir. 1986)). For the reasons that follow, defendants have met their burden of showing that a pre-filing order should be entered against Peter.

1.    Notice and an opportunity to oppose the order before it is entered

Defendants' answer, filed on March 6, 2017, includes a counterclaim for injunctive relief against Peter and a request for vexatious litigant designation. See Doc. 66. Defendants elaborated on their request for a vexatious litigant order in their trial memorandum filed a month before trial. Doc. 486. The court conducted a three-day trial, plus provided approximately two hours of time for closing argument on a fourth day. Peter actively participated in the trial.

Peter had ample notice of the request for injunctive relief and more than ample opportunity to oppose the request before and at trial.

In light of the fact that a request for an injunction was pled from the start in defendants' counterclaim and given that Peter had ample opportunity to respond to that request and defend at trial, the court

Page 35 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

concludes that Peter had notice and an opportunity to oppose any order before it was entered.

2. Cases and motions leading the court to conclude that a vexatious litigant order is needed

Peter is a prolific pro se litigator, and has been for at least more than ten years. His most frequent targets have been his family members and entities they own. In particular, Peter has sued Victor, Evye, and Anthony multiple times; he has sued Barbara twice before filing this adversary proceeding. He has extended the targets of his claims to include his siblings' spouses, as well as the next generation of the family, including his nieces Nicole and Kimberley, and Kimberley's spouse.

Peter's suits against his family are numerous and include those brought in state and United States district and bankruptcy courts, in multiple jurisdictions. The litigation began with the 2006 Nevada Case. Although that case was not an action against defendants in this case for purposes of the wrongful use of civil proceedings claims analyzed above, it is part of the litigation net thrown by Peter that has trapped his family members for years. All of the Prior Lawsuits listed at the beginning of this Memorandum Opinion, plus the current adversary proceeding, provide support for entering a vexatious litigant order.

These actions demonstrate that Peter's lawsuits against defendants have been numerous and repetitive, especially as to Victor, Evye, Anthony, and Barbara. The number of lawsuits filed against his family members, along with the overlapping nature of the claims contained in the lawsuits, serve to support defendants' claim for injunctive relief.

Page 36 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

3.    Finding of frivolousness or harassment

        To analyze whether litigation has been frivolous or harassing, the court considers four factors[9] enunciated by the Second Circuit.   See Molski, 500 F.3d at 1057; Safir, 792 F.2d 19.

        In addition to looking at the Safir factors, this court must "look at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims."   De Long, 912 F.2d at 1148 (quoting In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988)).

> "Frivolous litigation is not limited to cases in which a legal claim is entirely without merit.  It is also frivolous for a claimant who has some measure of a legitimate claim to make false factual assertions.  Just as bringing a completely baseless claim is frivolous, so too a person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false."

Molski, 500 F.3d at 1060-61.

        a.    The litigant's history of litigation and, in particular, whether it entailed vexatious, harassing or duplicative lawsuits

        For the reasons outlined earlier in this Memorandum Opinion, the documentary evidence and defendants' credible and consistent testimony at trial demonstrate that Peter's lawsuits against them are harassing and duplicative.

        The extreme nature of the unsubstantiated allegations made by Peter, and his own testimony, lead the court to conclude that Peter filed the lawsuits for the purpose of harassment.

        Peter's cavalier attitude toward the damage that such unsubstantiated allegations cause when placed in the public record, whether a complaint is served or not, is illustrative of his

---

[9]    Although Molski and Safir set out five factors, only the first four relate to whether a litigant's filings were frivolous.

Page 37 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

1  callous disregard for basic standards of pleading and the integrity

2  of the courts.  Our judicial system is not intended to give persons

3  a free pass to make any allegations the person dreams up, with

4  absolutely no supporting evidence, circumstantial or otherwise.

5  Such conduct, especially when repetitive, must be addressed and

6  stopped.  Both defendants and the judicial system deserve

7  protection from Peter's litigation abuses.

8       According to his testimony, Peter graduated from law school

9  and is a candidate for the California Bar.  He has been litigating

10 against these defendants, on basically the same claims, in state

11 and federal courts for more than 14 years.  He claims to have

12 clerked for judges and worked in the federal court system.  Despite

13 his legal training, experience as a clerk, and many years of

14 litigation experience, he sees fit to repeatedly file numerous

15 claims that have no factual basis.

16      A cursory review of the dockets in Peter's main case, and in

17 the related adversary proceedings pending in this court,

18 demonstrate significant evidence of duplication and lack of

19 truthfulness.[10]

20      For example, Peter submitted fabricated or altered documents

21 to this court and the Office of the United States Trustee (the

22 "UST").  This court ruled at least twice that Peter has altered or

23 fabricated documents.  See Order Granting Motion to Convert Case

24 from Chapter 11 to Chapter 7, Main Case No. 16-33185, Doc. 278

25 (finding that Peter provided altered bank statements to the UST);

26

[10]   The court granted defendants' request to take judicial notice of a
number of documents from this adversary proceeding and the main case.
Page 38 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Order Denying Motion For Protective Order, Adv. No. 18-3022, Doc. 201 (finding that Debtor submitted altered photograph of mailing envelope from the UST).

This court has sanctioned Peter in this adversary proceeding for discovery abuses, Doc. 163, and in Adv. No. 18-3022, Doc. 218. In the main bankruptcy case, this court found Peter in contempt for his failure to cooperate with his Chapter 7 trustee in recovering several hundred thousand dollars Peter transferred to Singapore in violation of this court's orders.  Order Granting Trustee's Motion for Contempt, Main Case No. 16-33185, Doc. 590.

As in Molski, Peter has lied and repeatedly filed meritless actions with factually similar or identical allegations.  The court concludes that the Peter's history of litigation entails vexatious, harassing or duplicative lawsuits against defendants, and a pattern of a lack of truth.

    b.  Whether the litigant had an objective good faith expectation of prevailing in those actions

For all the reasons the court outlined earlier in this opinion, the court concludes that defendants have met their burden of proof that Peter had no reasonable objective basis to believe his claims were true and therefore no objective good faith expectation that he would prevail in the actions.

    c.  Whether the litigant was represented by counsel

Defendant has not been represented by counsel in his Oregon bankruptcy case or this action, and there is no evidence that he

Page 39 - MEMORANDUM OPINION/REPORT AND RECOMMENDATION

retained counsel in any of the Prior Lawsuits.[11]

Peter has made numerous unsupported representations in his main case and related adversary proceedings that he either will or has attempted to get counsel.  Usually those assertions were offered in an attempt to obtain extensions of time and create delay.  The fact that Peter proceeds pro se in essentially every case he files, in combination with the high volume of filings,[12] supports a finding of frivolousness.  See, e.g., Abdullah v. Gatto, 773 F.2d 487, 488 (2nd Cir. 1985) (noting that multiple pro se filings were appropriately redressed by a bar on future pro se filings).

d.  Whether the litigant caused needless expense to other parties or imposed an unnecessary burden on the courts and their personnel

Defendants introduced evidence of a portion of the costs of the multiple proceedings Peter has filed against them.  See

_____

[11]  The court understands that Peter had counsel when he filed his 2013 Chapter 13 bankruptcy case in the Central District of California.  Peter filed the adversary proceeding against defendants in that case pro se.

[12]  For example, in the main bankruptcy case in this court, there were more than 800 docket entries by the time the trial in this adversary proceeding began, many of which were documents and motions filed by Peter, or notices or orders related to documents he filed.  Case No. 16-33185-pcm7.  In this adversary proceeding, which was not a particularly complex case, there were 550 docket entries by the time the trial began.  Adv. No. 16-3114.  Similarly, many of those docket entries were for documents or motions filed by Peter, or notices or orders necessitated by Peter's numerous filings.  The delay of nearly three years from the time the complaint was filed until this case was tried in August 2019 was caused, in this court's view, in large part by delay tactics employed by Peter.

Page 40 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Exhibits A through G.  Victor testified that those exhibits
represent a small percentage of the total fees and costs defendants
have paid through the years in defending against the Prior
Lawsuits.  Evye testified that she contacted some of the law firms
to ask for payment ledgers showing the amounts billed and paid.
She also testified that the fees represented in these exhibits were
incurred in connection with Peter's claims against the family.
Anthony testified that he was not a good bookkeeper and initially
failed to pay two attorney fee bills relating to litigation with
Peter, for which he was sued for payment by the law firms.  He
further credibly testified that both bills were resolved by payment
of an agreed amount, but he could not recall the precise amount of
the payments.

The exhibits offered by defendants and their testimony,
although not sufficient to support an award of a particular amount
of monetary damages on their first counterclaim, do sufficiently
demonstrate that years of defending against Peter's litigation has
cost them substantial amounts of money.  The attorney fee request
defendants made after they were granted summary judgment in this
adversary proceeding was almost $200,000.  The evidence
demonstrates that Peter's litigation has cost the defendants
dearly.

Furthermore, even a cursory review of the dockets in the Prior
Lawsuits, this adversary proceeding, and the main bankruptcy case
show that Peter has filed motion after motion, has failed to abide
by the general rules of discovery, and has falsified documents and

fabricated testimony.  Defendants' need to deal with Peter's numerous motions, appeals, requests for reconsideration, and requests for extensions of time caused them to incur unnecessary and undue expense.

Defendants' testimony also portrayed the other economic and non-economic costs of Peter's claims.  Defendants feel stalked. They all testified, with conviction, that they have lost faith in our legal system as a result of having to deal with Peter's incessant, multiple and every-expanding lawsuits.  They feel that Peter uses the legal system as a weapon to terrorize them. Furthermore, defendants testified that that they live in a state of fear.  They fail to understand how a person can allege any facts he dreams up, file false documents, and trick courts into entering default orders, over and over again, without consequence or repercussion.

Defendants testified they are emotionally and physically scared of Peter.  Their fear is real.

Nicole testified that she is reluctant to form a close relationship with a partner for fear a partner might get dragged into Peter's next lawsuit, as has happened to her brother-in-law Austin Bell.  All of the defendants had to take three days out of their schedules to come from out-of-state to Portland for trial. Some missed work.  It is true that the trial involved defendants' counterclaims against Peter, but it was Peter's eleventh lawsuit that finally made them decide to strike back.

Peter's litigation tactics in this case, his main case, and

Page 42 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

other related adversary proceedings have caused substantial needless burden on this court.  The court has had to rule on numerous specious motions, including motions to reconsider and improper and abusive discovery motions or objections.

For the reasons stated above, the court finds that defendants have shown that Peter's conduct in this case, the main bankruptcy case, and the Prior Lawsuits caused needless expense to other parties and imposed an unnecessary burden on the courts and their personnel.

4.   Narrowly tailored order so as to closely fit the specific vice encountered

As part of this factor, the court considers whether other sanctions would be adequate to protect the courts and other parties.  See Molski, 500 F.3d at 1058 (five factors set out in Safir provide helpful framework for applying factors (3) and (4) outlined in De Long).

Peter's comments at trial make it clear he will not stop his spurious lawsuits just because he has lost on his claims in this adversary proceeding.  Near the conclusion of trial, he announced that his next lawsuit will be a wrongful death suit against defendants for causing his son Phillip's death.  Absent intervention, Peter will not stop.  As more jurisdictions enter pre-filing orders, he will simply move jurisdictions or court systems to find another venue to victimize defendants.  His conduct since being declared a vexatious litigant by the California state courts demonstrates this behavior.

In 2011, the California Superior Court declared Peter a vexatious litigant ("California Order").  Exh. DDD.  After entry of that order,

Page 43 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Peter filed bankruptcy in California.  Along with the main bankruptcy case, he filed the 2013 California Bankruptcy Adversary Proceeding, asserting claims similar to those asserted in this adversary proceeding. After the California bankruptcy case and the 2013 California Bankruptcy Adversary Proceeding were dismissed, Peter moved his efforts to Nevada, where he filed Chapter 11.  Along with his Nevada bankruptcy case, he filed the 2013 Nevada Bankruptcy Adversary Proceeding, again alleging claims similar to those filed in his other cases against the family. His Nevada Chapter 11 was dismissed, as was the 2013 Nevada Bankruptcy Adversary Proceeding.

Not to be deterred, Peter represented that he had moved to Oregon, and commenced his third bankruptcy case in July 2016, in this court.  In August 2016, he commenced this adversary proceeding, using the filing of his bankruptcy case in this district to support jurisdiction in this court over state law claims against defendants, none of whom live in Oregon.

As have the many courts that preceded this one, this court has been burdened by Peter's excessive number of meritless motions, delay tactics, discovery abuses, and baseless requests for reconsideration.

Given Peter's stated intent to commence more litigation, and the volume and cost of the litigation already pursued against defendants, the substance of which he has never supported with any credible evidence, monetary sanctions are inadequate to cause debtor to cease his litigation efforts against his family.  Moreover, monetary sanctions would have no effect on the burden Peter is regularly placing on his family members, as well as on this and other courts.  Further, this

Page 44 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

court has no confidence that Peter would voluntarily pay any sanction awarded.[13]

The court therefore finds that defendants have met their burden that other sanctions would not be adequate to address Peter's conduct. The only remedy to protect the defendants from further harm is a geographically broad pre-filing order that is narrowly tailored to closely fit the specific vice encountered.

This court may look to findings from prior vexatious litigant orders in other courts to support entry of such an order. See Bertran, 2018 WL 1704306 at *6.

As stated above, Peter was declared a vexatious litigant in California in 2011. Exh. DDD. Peter is also subject to a pre-filing order issued by the Ninth Circuit Court of Appeals. See Ninth Circuit Case No. 17-80195 ("Ninth Circuit Order").[14] The Court of Appeals issued the Ninth Circuit Order after entering its own order to show cause due to the frequency of Peter's appeals to the Ninth Circuit, and their consistent lack of merit.

The previous orders entered by other courts provide guidance as to

[13]    Peter recently filed a request in Adv. No. 18-3022 to be excused from paying a $222 discovery sanction levied against him, claiming an inability to pay it.  Doc. 228.  In the motion, he represented that he would need to hitchhike to Seattle for his deposition.  He would have to live off the land, including eating native plants, quail, doves, and snakes, because he could not afford food.  The court has serious doubts about Peter's plea of poverty.  Regardless, this is further indicia that Peter would be unlikely to ever voluntarily pay a monetary sanction, particularly one significant enough to deter him from future frivolous filings.

[14]    The Court informed the parties at closing argument that it intended to take judicial notice of the Ninth Circuit Order and associated pleadings, as well as other court filings the court deemed relevant.
Page 45 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

how to narrowly tailor an order to address the vice at hand.  The Ninth Circuit Order applies to all notices of appeal filed by Peter, other than where he has counsel or the district court certifies that the appeal is not frivolous.  As with the California Order, the Ninth Circuit Order is not a bar to filing, but a restriction on filing that may be overcome in the appropriate situation.

The depth of Peter's litigiousness dictates that this court should enter a broad order.  The order will apply to Peter's ability to file new litigation in all bankruptcy courts nationwide.  A narrower geographic limitation would not be effective, because Peter has already sued defendants in California, Nevada, Oregon, and Minnesota.  Peter's willingness to use any court's jurisdiction, whether proper or not, shows that it would be ineffective to limit the pre-filing order to any specific geographic area.  However, the court will limit the breadth of that order in two ways.

First, Peter will not be completely banned from filing new adversary proceedings or contested matters against defendants in all bankruptcy courts.  Instead, he will be allowed to file adversary proceedings or contested matters if he is represented by counsel licensed or admitted *pro hac vice* to practice in the applicable district.  The order also will allow for pre-filing review of the complaint or contested matter by the chief bankruptcy judge in the applicable district to determine, in his or her sole discretion, whether the court should allow the complaint or contested matter to proceed.

Second, the order will be limited to adversary proceedings or contested matters filed against Victor, Evye, Anthony, Mariette,

Page 46 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

Barbara, David Alexander,[15] Kimberley, Nicole, Austin Bell, the estate of Paul or Klara Szanto, any trust in which any of the above persons serve as trustee or hold a beneficial interest, and any entity in which any of the above persons hold a controlling interest ("Protected Persons"). Unlike the California Order and the Ninth Circuit Order, the order will not apply to persons or entities other than the Protected Persons. Although the pervasive and abusive nature of Peter's litigation abuses frankly may warrant a broader injunction, defendants' request was limited in scope, and Peter has not received notice that a broader order might be entered.

The court will therefore enter an order restricting Peter from filing any new adversary proceedings or contested matters against any of the Protected Persons in bankruptcy courts nationwide, except: (1) any adversary proceeding or contested matter against any of the Protected Persons in which Peter is represented by legal counsel authorized to practice in the district (including by *pro hac vice* admission); or (2) any adversary proceeding or contested matter against any of the Protected Persons that the chief bankruptcy judge in the relevant district authorizes for filing.

This court concludes that it would be appropriate to enter a similar order that applies to Peter's filings in federal district courts nationwide. Although this court was unable to locate any case in which a bankruptcy judge has made findings and recommendations to a district court for the entry of a pre-filing order, there are cases in which a magistrate judge issued findings and recommendations to the applicable

---

[15]   David Alexander is Barbara's husband.

Page 47 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

district court judge regarding such an order.  See, e.g., Harry and
David v. Pathak, 2012 WL 1309181 (D. Or. Feb. 9, 2012) (magistrate judge
recommended that no pre-filing order be entered); Marks v. United
States, 2008 WL 803150 (W.D. Wash., Mar. 24, 2008) (district court
entered pre-filing order based on the findings and recommendation of
magistrate judge); Cello-Whitney v. Hoover, 769 F.Supp. 1155 (W.D. Wash.
1991) (magistrate judge recommended that a pre-filing order be entered
and set out proposed specific terms of such an order).

Therefore, based on my findings set out in this Memorandum Opinion,
this court recommends to the United States District Court for the
District of Oregon that it also enter a pre-filing order, similar in
scope to the order this court will enter, limiting Peter's ability to
file new lawsuits against any of the Protected Persons in any federal
district court nationwide.

CONCLUSION

For the reasons stated above, the court will enter judgment against
Peter in favor of Victor, Evye, Anthony, and Barbara on defendants'
counterclaim for wrongful use of civil proceedings and award damages as
set out above.  The court will enter a judgment of dismissal of the
wrongful use of civil proceedings counterclaims of John Barlow,
Mariette, Kimberley, Nicole, and Austin.  The court will prepare the
judgment.

Defendants' request that this court grant the Protected Persons
injunctive relief in bankruptcy courts nationwide will be granted.  The
court will prepare the appropriate order as outlined above.

Finally, the court will transmit this Memorandum Opinion to the

Page 48 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

district court as a Report and Recommendation that the Oregon District Court enter a similar order applicable to district courts nationwide.

###

NOTE:    The procedure for filing objections to this Report and Recommendation is found in Fed. R. Bankr. P. 9033.


cc:  Peter Szanto
     Nicholas J. Henderson

Page 49 – MEMORANDUM OPINION/REPORT AND RECOMMENDATION

**DISTRICT OF OREGON**
**F I L E D**
**November 27, 2019**
**Clerk, U.S. Bankruptcy Court**

Below is a judgment of the court. If the judgment is for
money, the applicable judgment interest rate is: 1.56 percent
per annum.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In Re:                              )
                                    )  Bankruptcy Case No.
PETER SZANTO,                       )  16-33185-pcm7
                                    )
                    Debtor.         )
_____)
PETER SZANTO,                       )  Adversary No. 16-3114-pcm
                                    )
                    Plaintiff,      )  JUDGMENT
                                    )
          v.                        )
                                    )
EVYE SZANTO, VICTOR SZANTO,         )
NICOLE SZANTO, KIMBERLEY SZANTO,    )
MARIETTE SZANTO, ANTHONY SZANTO,    )
AUSTIN BELL, JOHN BARLOW, and       )
BARBARA SZANTO ALEXANDER,           )
                                    )
                    Defendant.      )
_____)

Following a trial on defendants' counterclaims and for the reasons

set out in the court's Memorandum Opinion/Report and Recommendation,

IT IS HEREBY ADJUDGED THAT

1.   The claim of defendants Nicole Szanto, Kimberley Szanto, Austin

     Bell, and Mariette Szanto for wrongful use of civil proceedings is

Page 1 -  JUDGMENT

1    DISMISSED.

2    2.    Defendant Victor Szanto is awarded damages of $165,000 against

3          plaintiff Peter Szanto.

4    3.    Defendant Evye Szanto is awarded damages of $105,000 against

5          plaintiff Peter Szanto.

6    4.    Defendant Anthony Szanto is awarded damages of $50,000 against

7          plaintiff Peter Szanto.

8    5.    Defendant Barbara Szanto Alexander is awarded damages of $25,000

9          against plaintiff Peter Szanto.

10   6.    Plaintiff Peter Szanto is ENJOINED from filing, in any bankruptcy

11         court in the United States, any new adversary proceedings or

12         contested matters against Victor Szanto, Evye Szanto, Anthony

13         Szanto, Mariette Szanto, Barbara Szanto Alexander, David Alexander,

14         Kimberley Szanto, Nicole Szanto, Austin Bell, the estate of Paul or

15         Klara Szanto, any trust in which any of the above persons serve as

16         trustee or hold a beneficial interest, and any entity in which any

17         of the above persons hold a controlling interest ("the Protected

18         Persons"), with the following exceptions:

19         a.    Peter is represented by legal counsel authorized to practice in

20               the district (including by *pro hac vice* admission); or

21         b.    Peter has received pre-filing authorization from the chief

22               bankruptcy judge of the district in which he seeks to file an

23   ////

24   ////

25   ////

26   ////

Page 2 - JUDGMENT

1          adversary proceeding or contested matter against any of the

2          Protected Persons.

3                                    ###

4    cc:   Peter Szanto
           Nicholas J. Henderson (via ECF)
5          UST (via ECF)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 3 —  JUDGMENT