# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**PETER SZANTO**,

               Appellant,

     v.

**EVYE SZANTO,** *et al.*,

               Appellees.

Case No. 3:19-cv-2043-SI

(Bankr. Ct. Case No. 16-33185-pcm7)
(Adv. Pro. No. 16-3114-pcm)

**OPINION AND ORDER**

Peter Szanto, 11 Shore Pine, Newport Beach, CA 92657. Appellant *Pro Se*.

Nicholas J. Henderson, MOTSCHENBACHER & BLATTNER LLP, 117 SW Taylor Street, Suite 300 Portland, Oregon 97204. Of Attorneys for Appellees Evye Szanto, Victor Szanto, Nicole Szanto, Kimberley Szanto, Mariette Szanto, Anthony Szanto, Austin Bell, and Barbara Szanto Alexander.

**Michael H. Simon, District Judge.**

     This case comes to the District Court as an appeal from the Memorandum

Opinion/Report and Recommendation issued by the U.S. Bankruptcy Court for the District

Oregon after a bench trial on Appellees' counterclaims[1] in an adversary proceeding involving

---

[1] The Bankruptcy Court resolved Appellant's claims against Appellees through summary judgment, and this Court affirmed that decision. *See Szanto v. Szanto*, 2020 WL 7419215 (D. Or. Dec. 18, 2020).

PAGE 1 – OPINION AND ORDER

Appellant Peter Szanto (Appellant)[2] and Appellees Evye Szanto, Victor Szanto, Nicole Szanto,

Kimberley Szanto, Mariette Szanto, Anthony Szanto, Austin Bell, and Barbara Szanto Alexander

(Appellees).[3] Instead of filing a reply memorandum in support of his appeal, Appellant filed a

"Motion for Writ Relief" requesting a writ vacating the opinion and judgment of the Bankruptcy

Court. Appellant asserts that the Bankruptcy Court did not have jurisdiction, which also is one of

Appellant's grounds of appeal. For the reasons below, the Court affirms in part the Bankruptcy

Court's Memorandum Opinion, adopts in part the Bankruptcy Court's Report and

Recommendation, and denies Appellant's motion for writ.

## PROCEDURAL BACKGROUND

On August 16, 2016, Appellant filed a voluntary petition under Chapter 11 of the U.S.

Bankruptcy Code. This started Bankruptcy Case No. 16-bk-33185-pcm11 (Main Bankruptcy

Case). The Bankruptcy Court later converted that case, over Appellant's objection, to a

proceeding under Chapter 7 (changing the case number to 16-bk-33185-pcm7). On

September 21, 2016, Appellant filed a complaint against Appellees, beginning Case No. 16-ap-

3114 (the Adversary Proceeding), the case that is the subject of this appeal.

Appellees filed an *ex parte* motion for extension of time to respond to the complaint filed

in the adversary proceeding. The Bankruptcy Court granted that motion. Appellees filed a

motion to dismiss with supporting documentation in response to the complaint, which the

---

[2] Because Appellant and Appellees are family members and most have the same last name, to avoid confusion, the Court generally will refer to them as Appellant and Appellees instead of by name, except when discussing an individual Appellee, in which case the Court references them by first and last name, and then by first name.

[3] Although originally named by Appellant in the Adversary Proceeding as a defendant, John Barlow was dismissed from the Adversary Proceeding on August 14, 2017 by the Bankruptcy Court because Mr. Barlow died. Thus, Mr. Barlow is not a party to this appeal.

Bankruptcy Court treated as a motion for summary judgment. In response, Appellant filed an Amended Complaint. Appellees responded first with another motion to dismiss, and later with an answer and counterclaims.

The parties engaged in discovery and litigated several motions in the Adversary Proceeding, including motions to strike, motions to dismiss, and discovery motions. On August 15, 2017, Appellant filed a motion for partial summary judgment against Appellees' counterclaim for wrongful initiation of civil proceedings. On August 25, 2017, Appellees filed a motion for partial summary judgment, moving defensively against all of Appellant's claims and offensively in favor of their counterclaim for wrongful initiation of civil proceedings.

On September 6, 2017, Appellant filed a "Notice of Withdrawal of Consent to Entry of Final Judgment in the Bankruptcy Court." Appellant stated that to the extent he had given consent to the Bankruptcy Court to issue a final judgment in the Adversary Proceeding, he withdrew that consent. On September 16, 2017, U.S. Bankruptcy Court Judge McKittrick sent and docketed a letter to the parties explaining that because Appellant's notice of withdrawal of consent did not include a motion, the Bankruptcy Court was taking no action on the notice. Judge McKittrick further explained that if Appellant wanted the Court to take action, Appellant would need to file a motion. Appellant subsequently filed a notice on April 16, 2018 electing the U.S. District Court to enter final judgment. On April 25, 2018, the Bankruptcy Court issued an order reiterating that because this notice, like Appellant's earlier notice, contained no motion, the Bankruptcy Court would take no action on Appellant's notice. The Bankruptcy Court also explained that to the extent Appellant was requesting to withdraw his consent to the Bankruptcy court's jurisdiction, the Bankruptcy Court would deny that request. The Bankruptcy Court described that Appellant had expressly consented to the Bankruptcy Court's jurisdiction at a

pretrial conference on January 31, 2017. The Bankruptcy Court also noted that Appellant waived objection to consent by failing to object to the Bankruptcy Court's jurisdiction in his complaint and through his actions in litigating the adversary proceeding for a year before objecting. Appellant later moved to withdraw the reference and appealed to this Court the Bankruptcy Court's denial of that motion. This Court affirmed. *Szanto v. Santo*, 2019 WL 1932366 (D. Or. May 1, 2019). In so doing, this Court held that Appellant failed to provide good cause to withdraw his express consent to the final jurisdiction of the Bankruptcy Court at the stage of the litigation at which he attempted to do so. *Id.* at *4-6.

On May 17, 2018, the Bankruptcy Court denied Appellant's motion for summary judgment on Appellees' counterclaim, granted Appellees' motion for summary judgment on Appellant's claims, and denied Appellees' motion for summary judgment on their counterclaim. In ruling on these motions, the Bankruptcy Court also denied Appellant's request to amend his complaint to add a new claim. This left only Appellees' counterclaims for trial. The Bankruptcy Court entered partial judgment on the dismissed claims under Rule 54(b) of the Federal Rules of Civil Procedure. On December 18, 2020, this Court affirmed the Bankruptcy Court's decision.

While Appellant's appeal of the Bankruptcy Court's summary judgment ruling was pending, the Bankruptcy Court moved forward with its trial on Appellees' counterclaims for wrongful use of civil proceedings and request for a nationwide injunction or designation of Appellant as a vexatious litigant. The Bankruptcy Court held a three-day bench trial beginning on August 26, 2019. The Bankruptcy Court issued its opinion on November 25, 2019. *See* App'x (ECF 26-1) 1-49. The Bankruptcy Court dismissed the claims against Appellant by Appellee Mariette Szanto. The Bankruptcy Court denied as untimely Appellees request for punitive damages, raised for the first time during closing arguments. The court rejected on the merits

Appellant's defense that he had a constitutional right to bring all the various lawsuits and proceedings against Appellees, even if duplicitous or without merit. The Bankruptcy Court found Appellant's defense that Appellees' claims are barred by the statute of limitations, a defense first raised by Appellant during his case in chief at trial, to be untimely and waived. Judge McKittrick also noted that the facts presented by the parties contradicted one another and that generally he found Appellees more credible than Appellant.

For Appellees' claim of wrongful use of civil proceedings, the Bankruptcy Court summarized ten proceedings filed in various courts by Appellant, and one case filed by Susan Szanto that the court found was actually filed by Appellant. The Bankruptcy Court noted that none of these proceedings had been filed against Austin Bell, Nicole Szanto, or Kimberley Szanto, and thus dismissed this claim by those Appellees. The Bankruptcy Court found that six actions were terminated in favor of Appellees, allowing them to serve as the basis of a wrongful use of civil proceeding claim. Finally, the Bankruptcy Court found that the remaining four Appellees (Victor Szanto, Evye Szanto, Anthony Szanto, and Barbara Szanto Alexander) proved that Appellant lacked probable cause to initiate all six actions and filed the actions with malice. The court denied Appellees' request for damages in the amount of attorney's fees and expenses defending the underlying lawsuits as insufficiently proven, and awarded the four Appellees emotional distress damages, based on an amount for each action filed against each Appellee.

For Appellees' second claim, they requested that Appellant be required to obtain a pre-filing order before filing any claim against them in federal bankruptcy or district court and that the bankruptcy court issue an injunction limiting Appellant from filing any action against Appellees in any bankruptcy court or district court nationwide. The Bankruptcy Court concluded that the first request was subsumed by the second and only addressed the second.

The Bankruptcy Court stated that before restraining a party's fundamental right to access to the courts, the Bankruptcy Court must

> (1) give litigants notice and an opportunity to oppose the order before it is entered; (2) compile an adequate record for appellate review, including a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as to closely fit the specific vice encountered.

App'x 34 (quoting *In re Bertran*, 2018 WL 1704306, *6 (9th Cir. BAP Apr. 6, 2018) (unpublished) (quoting *Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1062 (9th Cir. 2014)). The Bankruptcy Court identified five factors the Ninth Circuit has established for evaluating whether conduct was sufficiently frivolous and the order sufficiently narrow:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 36 (quoting *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007)).

The Bankruptcy Court analyzed the relevant factors and concluded that an injunction is necessary. The Bankruptcy Court noted that Appellant had stated at trial that his next lawsuit against Appellees would be a wrongful death lawsuit. The Bankruptcy Court concluded that Appellant "will not stop" and as more jurisdictions enter pre-filing orders "he will simply move jurisdictions or court systems to find another venue to victimize defendants," as demonstrated by his change in jurisdictions after being designated a vexatious litigant in California.

The Bankruptcy Court entered a nationwide prefiling order for all U.S. district bankruptcy courts. The Bankruptcy Court issued an injunction precluding Appellant from filing

any adversary proceedings or contested matters against Victor Szanto, Evye Szanto, Anthony

Szanto, Mariette Szanto, Barbara Szanto Alexander, David Alexander, Kimberley Szanto, Nicole

Szanto, Austin Bell, the estate of Paul or Klara Szanto, any trust in which any of the above

persons serve as trustee or hold a beneficial interest, and any entity in which any of the above

persons hold a controlling interest (Protected Persons). The injunction does not apply to any

adversary proceeding or contested matter filed in which Appellant is represented by legal

counsel authorized to practice in the district (including by *pro hac vice* admission), or any

adversary proceeding or contested matter against any of the Protected Persons that the chief

Bankruptcy Court Judge in the relevant district authorizes for filing.

The Bankruptcy Court concluded that a similar injunction would be appropriate for U.S.

District Courts, but that the Bankruptcy Court did not have the authority to enter such a pre-filing

order. Thus, under Rule 9033 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy

Court issued a report and recommendation that this District Court enter a similar injunction for

the same reasons the Bankruptcy Court entered its injunction.

Appellant moved for extensions of time to file his objections to the Report and

Recommendation. Appellant appears to consider the entire Memorandum Opinion to be a report

and recommendation, when the only part that was a report and recommendation was the proposal

that this Court enter a similar injunction as entered by the Bankruptcy Court. On January 16,

2020, Appellant filed his objections, making numerous objections to issues unrelated to that

narrow report and recommendation. Appellant objected that: (1) Judge McKittrick is so biased he

became an active participant on behalf of Appellees; (2) because Appellees obtained a violence

protection order in the Nevada Justice Court, the Bankruptcy Court lacked jurisdiction; (3) the

Bankruptcy Court denied Appellant's right to a jury trial, which Appellant had timely asserted;

(4) Judge McKittrick misstated Appellant's right to redress his grievances against Appellees because Appellant's cases were not duplicitous or without merit; (5) Appellant could not have known that he had a statute of limitations defense until after Appellees' case in chief, and thus it was timely raised; (6) Judge McKittrick improperly attacked Appellant's credibility, as the Bankruptcy Court judge has done since the first hearing when he attacked Appellant's ethnicity by asking how to pronounce his name; (7) Appellant was hospitalized before trial and Judge McKittrick's refusal to stay or delay the trial was prejudicial; (8) emotional distress damages are improper damages for the claim on which Appellant was found liable; (9) the Bankruptcy Court essentially adjudicated the six underlying cases on which the claim for wrongful use of civil proceedings was based and the Bankruptcy Court did not have jurisdiction over those cases and those cases are closed; (10) the Bankruptcy Court erred in concluding that Appellant was the real plaintiff in interest in the domestic violence case brought by Susan Szanto against Appellees; and (11) the injunction is overbroad, issued for an improper purpose by Judge McKittrick, and beyond the authority of Judge McKittrick. ECF 12-1. Appellees responded that Appellant's objections are beyond the scope because they relate to the Bankruptcy Court's opinion and not its report and recommendation, and because Appellant failed to provide specific and supported objections as required. ECF 12-2.

Meanwhile, on December 11, 2019, Appellant filed his Notice of Appeal on the Memorandum of Opinion and Report and Recommendation and Judgment.[4] ECF 1. This Court now considers the appeal of the Memorandum Opinion portion and whether to adopt the Report and Recommendation portion of the Bankruptcy Court's decision.

_____

[4] Appellant originally filed a notice of appeal on December 9, 2019, but that notice was rejected by the Bankruptcy Court clerk.

**STANDARDS**

**A.  Appeal of Memorandum Opinion and Judgment**

The district court reviews final opinions and judgments of a bankruptcy court under traditional appellate standards. *Cf. Stern v. Marshall*, 564 U.S. 462, 474-75 (2011) ("Parties may appeal final judgments of a bankruptcy court in core proceedings to the district court, which reviews them under traditional appellate standards."). A district court reviews a bankruptcy court's "findings of fact for clear error and conclusions of law and of mixed questions of law and fact de novo." *In re Icenhower*, 757 F.3d 1044, 1049 (9th Cir. 2014).

**B.  Consideration of Report and Recommendation**

A portion of the Bankruptcy Court's opinion was issued as a report and recommendation under Rule 9033 of the Federal Rules of Bankruptcy Procedure. Under Rule 9033, a district judge exercises de novo review over "any portion of the Bankruptcy Court Judge's findings of fact or conclusions of law to which specific written objection has been made." Fed. R. Bankr. P. 9033(d). Those specific written objections are to be made "within 14 days after being served with a copy of the proposed findings of fact and conclusions of law." *Id.* 9033(b). The Bankruptcy Court Judge may extend the time to file an objection for another 21 days. *Id.* 9033(c).

Although Bankruptcy Rule 9033 does not specify the procedure for district court review in the absence of written objection, the Advisory Committee Note indicates that Bankruptcy Rule 9033(d) "adopts the de novo review provisions of Fed. R. Civ. P. 72(b)." Fed. R. Bankr. P. 9033(d) advisory committee's note to 1987 amendment. The Advisory Committee Note to Rule 72(b) of the Federal Rules of Civil Procedure provides that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to 1983

amendment. Therefore, in the absence of a specific written objection, the district court need only review the face of the record for clear error before adopting the Bankruptcy Court Judge's recommendation. *See In re SemCrude, L.P.*, 2018 WL 6077979, at *9 (Bankr. D. Del. Nov. 20, 2018) ("Proposed findings of fact and conclusions of law as to which New Dominion has not objected may be adopted after reviewing for clear error."); *In re 1250 Oceanside Partners*, 260 F. Supp. 3d 1300, 1304 (D. Haw. 2017) ("That is, the district judge may accept the portions of the findings and recommendation to which the parties have not objected as long as it is satisfied that there is no clear error on the face of the record." (cleaned up)); *Davis v. The Merv Griffin Co.*, 128 B.R. 78, 80 (D.N.J. 1991) (stating that the court "need only satisfy itself that there is no clear error on the face of the record in order to accept" a bankruptcy court recommendation to which there has been no objection).

## DISCUSSION

Appellant argues that the Bankruptcy Court's decision is invalid due to the bias of the Bankruptcy Court Judge and lack of jurisdiction. Appellant also argues that the Bankruptcy Court erred by: (1) concluding that Appellant's statute of limitations defense was waived; (2) improperly resolving Appellees' counterclaim for wrongful use of civil proceedings; (3) denying Appellant his constitutional right to a jury; (4) improperly concluding that Appellees were emotionally distressed by Appellant's conduct; (5) denying a stay of the trial despite Appellant's hospitalization and physical condition; (6) awarding damages that were speculative; (7) entering an improper, nonfinal judgment; (8) allowing Appellant to be effectively arrested by the U.S. marshals and forced into trial while in extreme pain; and (9) entering a nationwide injunction without proper authority.

A.  **Judicial Bias**

Appellant argues, with much emphasis and hyperbole, that the Bankruptcy Court Judge exhibited extreme bias, "rage" against, and "hatred" toward Appellant that caused adverse rulings on every motion or objection filed by or against Appellant. This Court has repeatedly rejected Appellant's claims of judicial bias and that the Bankruptcy Court Judge erred by not recusing himself or his opinions must be vacated because of such purported bias. This Court has explained that adverse rulings and alleged prejudice from judicial proceedings are an insufficient basis on which to assert bias. As the Ninth Circuit has explained:

> The standard for recusal under 28 U.S.C. §§ 144, 455 is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. The alleged prejudice must result from an extrajudicial source; *a judge's prior adverse ruling is not sufficient cause for recusal*.

*United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (emphasis added) (quotation marks and citations omitted); *see also United States v. Holland*, 519 F.3d 909, 913-14 (9th Cir. 2008) ("In general, the conscientious judge should also bear in mind that § 455(a) is limited by the 'extrajudicial source' factor which generally requires as the basis for recusal something other than rulings, opinions formed or statements made by the judge during the course of trial."); *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) ("To provide grounds for recusal, prejudice must result from an extrajudicial source. A judge's previous adverse ruling alone is not sufficient bias." (citation omitted)).

Indeed, as stated by the Supreme Court, "[j]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Litekey v. United States*, 510 U.S. 540, 555 (1994). Further, "[a] judge's views on legal issues may not serve as the basis for motions to disqualify." *United States v. Conforte*, 624 F.2d 869, 882 (9th Cir. 1980). To disqualify a judge based on judicial remarks during the course of judicial proceedings, the remarks must "reveal such a high

degree of favoritism or antagonism as to make fair judgment impossible." *Litekey*, 510 U.S. at 555.

Appellant asserts in a conclusory manner that the Bankruptcy Court Judge's rulings and comments reflect a deep-rooted animus and a high degree of antagonism against Appellant and favoritism toward Appellees. Appellant argues that because Judge McKittrick asked Appellant how to pronounce the name "Szanto" at an early hearing, granted extensions of time to Appellees, scheduled a hearing on a motion filed by Appellant one month before trial without waiting for a response to be filed, and other conduct demonstrates this favoritism toward Appellees and antagonism toward Appellant. The Court has considered Appellant's argument and disagrees that the asserted conduct by the Bankruptcy Court Judge meets the high standard for disqualification so as to render the Memorandum Opinion invalid.

**B.  Subject Matter Jurisdiction/Claim Preclusion**

Appellant argues that the Bankruptcy Court did not have subject matter jurisdiction over Appellees' counterclaims because Appellees Victor and Evye Szanto obtained an injunction in Nevada. On March 6, 2017, Victor and Evye obtained a "Temporary Order of Protection Against Domestic Violence" in the Justice Court of Tahoe Township, Douglas County, Nevada. App'x 65-68. This order: (1) prohibited Appellant from coming within 100 yards of Victor and Evye's residence in Nevada; (2) prohibited Appellant from coming within 100 yards of Victor and Evye's places of employment; (3) prohibited Appellant from "initiating or continuing any civil court action, proceeding, complaint, application, petition, motion, appeal, or request for affirmative relief in any state or territory" unless Appellant was represented by an attorney. A violation of the order would be a misdemeanor offense in Douglas County, Nevada. This order expired by its own terms on April 6, 2017, and the matter was docketed on that date to be heard for Victor and Evye's motion for an extended protective order. On March 7, 2017, Appellant

filed a notice with the Bankruptcy Court that Appellees had obtained an order that Appellant contended deprived the Bankruptcy Court of jurisdiction. The Bankruptcy Court did not act on this notice, which contained no motion.

The hearing in Nevada on Victor and Evye's requested extended order was rescheduled to August 15, 2017, and the matter was moved to the Justice Court of East Fork Township. App'x 228-31. The presiding Justice of the Peace granted Victor and Evye's motion for an extended protective order. Regarding the Bankruptcy Court proceedings, the Justice of the Peace stated in the order granting the extended protective order:

> The Adverse Party has also moved the Court to stay this proceeding pending outcome of litigation in the Bankruptcy Court of the District of Oregon. The motion is denied. This Court will accede to the superseding order of a court of competent, or superior jurisdiction, when and if such an order is entered. Pending issuance and service of such an order, however, the extended order will issue and remain in effect.

*Id.* at 231.

Appellant argues that because Victor and Evye obtained "two judgments" in the Nevada state court on "identical facts," Appellees cannot proceed with their claim for wrongful use of civil proceedings in the Bankruptcy Court. Appellant also posits that the Nevada "judgments" stripped the Bankruptcy Court of its subject matter jurisdiction. In Appellant's reply filing, in which he moved for a writ vacating the Bankruptcy Court's opinion and judgment for lack of subject matter jurisdiction, Appellant contends that the circumstances identified by the Eleventh Circuit in *Ray vs. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982), to bar an action are "precisely applicable."

The court in *Ray* described the elements of "res judicata," or claim preclusion, when a prior judgment bars a subsequent action. The Eleventh Circuit explained:

> For a prior judgment to bar a subsequent action, it is firmly
> established (1) that the prior judgment must have been rendered by
> a court of competent jurisdiction; (2) that there must have been a
> final judgment on the merits; (3) that the parties, or those in privity
> with them, must be identical in both suits; and (4) that the same
> cause of action must be involved in both suits.

*Id.* at 820 (quoting *Stevenson v. Int'l Paper Co.*, 516 F.2d 103, 108 (5th Cir. 1975)). The Ninth

Circuit applies the same elements. *See Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf.*

*of United States*, 577 F. Supp. 3d 1106 (D. Or. 2021) (describing claim preclusion under Ninth

Circuit law).

 Liberally construing Appellant's filings, the Court construes Appellant's filings and

argument as raising the affirmative defense of claim preclusion. This defense does not divest the

Court of subject matter jurisdiction. *See, e.g.*, 46 Am. Jur. 2d Judgments § 451 ("The rule of res

judicata is an affirmative defense, so the applicability of the doctrine does not deprive the second

tribunal or court of subject matter jurisdiction." (footnote citations omitted)). If the defense is

applicable, it would serve to bar Appellees from bringing the counterclaim against Appellant, but

it would not affect the Court's subject matter jurisdiction.

 The affirmative defense of claim preclusion can be waived, but it is not necessarily

waived by failing to allege it in an answer if the preclusive judgment was not rendered at the

time of the answer and the defendant raises the defense with enough notice for the plaintiff to

counter the defense. *See Sanchez v. City of Santa Ana*, 915 F.2d 424, 432 (9th Cir. 1990) ("The

City could not have raised a preclusion defense in its August 14, 1980 answer because Sanchez

did not receive the compensation award until November 12, 1981. . . . [T]he City did raise the

issue prior to the trial on damages, thus giving Sanchez notice of the plea of estoppel and a

chance to argue why the imposition of an estoppel would be inappropriate." (cleaned up));

*CollegeSource, Inc. v. AcademyOne, Inc.*, 709 F. App'x 440, 442 (9th Cir. 2017) ("AcademyOne

did not waive its preclusion defense by raising it for the first time on summary judgment because the preclusive judgment had not been rendered when the Answer was filed, and AcademyOne raised the defense as soon as it became available."). Considering Appellant's *pro se* status, the Court concludes that Appellant preserved this defense with his filing in the Bankruptcy Court of March 7, 2017.

Although Appellant preserved his ability to raise the affirmative defense of claim preclusion, there are several problems with his argument that it applies because of the Nevada protective order. The first is that the counterclaims in the Adversary Proceeding were not a "subsequent" proceeding to the protective order—they preceded the protective order. Appellant raised with the Nevada court that there was a preexisting federal litigation and the Nevada court nonetheless elected to proceed with its case.

The second problem is that the extended protective order expressly acknowledged that the East Fork Township court was an inferior court to the U.S. Bankruptcy Court for the District of Oregon and stated in its extended protective order that it would "accede to the superseding order of competent or superior jurisdiction" and keep its order in place only until the order of the superior jurisdiction was entered. The Justice Court of East Fork Township did not purport or intend to supersede the ongoing bankruptcy proceedings. Indeed, since the protective order was issued, Appellant has "continued" to litigate (activity precluded by the protective order) in the Bankruptcy Court and filed numerous appeals of the Bankruptcy Court decisions in this Court (also actions precluded by the protective order). If the protective order superseded and precluded claims in the Bankruptcy Court, all of those actions by Appellant would have violated the protective order.

The third problem is that the protective orders do not represent final judgments. The first protective order was temporary by its own terms. The second protective order expressly stated that it would remain in effect only until the Bankruptcy Court entered its order. Thus, although an order of a court may be construed as a final "judgment" for purpose of claim preclusion, these orders were not sufficiently final to be so construed.

The fourth problem is that the plaintiffs, cause of action, and available remedy were different in the U.S. Bankruptcy Court case than the case in the Justice Court in Douglas County, Nevada. The U.S. Bankruptcy Court case involved additional counterclaim plaintiffs, a claim for wrongful use of civil proceedings, and the court could award monetary damages and enter a broad injunction, potentially restraining all U.S. bankruptcy courts, and a report and recommendation to this Court. The Douglas County case involved only Victor and Evye, was a claim for a domestic violence protection order, sought only a protective order and no money damages, and was a court of inferior jurisdiction, with the ability to enjoin at most state actions and providing only a local misdemeanor as the punishment for a violation of the order. Thus there were not identical parties, causes of action, or remedies between the two cases.

For all of these reasons, the Court rejects Appellant's argument that Appellees were barred by the doctrine of claim preclusion from bringing their counterclaims or that the Bankruptcy Court lacked subject matter jurisdiction to consider the counterclaims because of the Nevada protective order. For the same reasons, the Court denies Plaintiff's motion for writ to vacate the Bankruptcy Court's opinion and judgment.

## C.  Statute of Limitations

The Bankruptcy Court concluded that Appellant waived his statute of limitations defense because he did not raise it until after Appellees rested their case at trial. Appellant argues that he had no way of knowing which lawsuits Appellees were referencing in their wrongful use of civil

proceedings counterclaim because it only generally states that Appellant brought numerous suits in various courts. Appellant argues that until Appellees presented their case at trial Appellant was not on sufficient notice to raise his statute of limitations defense. This argument is rejected.

Appellant knows what lawsuits he brought against Appellees and what dates they were filed and resolved. He could have raised a statute of limitations defense on information and belief. He also could have requested information in discovery to obtain clarity about the basis of Appellees' claims or filed a motion against Appellees' pleading.

Additionally, on February 9, 2018, Appellees filed Proofs of Claim in the Main Bankruptcy Case that described in detail their claim for wrongful use of civil proceedings in the Adversary Proceeding and attached an Addendum that listed by name all cases on which they based their claim and the dates on which the cases were filed and terminated. App'x 221-61. Appellant asserts that as a filer "without ECF access" it was difficult for him to access these forms and he did not obtain them until after trial. Appellant, however, was granted ECF access on December 13, 2018. *See In re Szanto*, Bankr. Ct. Case No. 16-33185-pcm7, (Bankr. D. Or. Dec. 13, 2018, ECF 630). Thus, by February 9, 2018 or no later December 13, 2018, Appellant had access to the detailed information on which to amend his answer to the counterclaims and assert his statute of limitations defense without even needing to undertake discovery. The trial was not until August 26, 2019. For all of these reasons, the Bankruptcy Court did not err in finding that Appellant's attempt to amend to add his statute of limitations defense at his case in chief at trial was untimely and that he had waived the defense.

## D.  Wrongful Use of Civil Proceedings Claim

### 1.  Adequacy of Pleading

Appellant first argues that Appellees' claim for wrongful use of civil proceedings must be dismissed because the pleading was inadequate. For example, Appellant asserts that it was titled

"wrongful initiation of civil proceedings" instead of "wrongful use of civil proceeding,"[5] that it

was brought as a counterclaim instead of a claim, and that it failed under Rule 8 of the Federal

Rules of Civil Procedure to provide a short and plain statement of a claim showing that

Appellees were entitled to relief.[6] Appellant contends that because the counterclaim did not list

the cases on which Appellees relied, Appellant was not provided fair notice of the claim.

Appellant fails to demonstrate that this argument was raised before the Bankruptcy Court.

The Court finds this argument without merit and declines to consider this new argument raised

for the first time on appeal. *See Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 455

(9th Cir. 2016) ("Absent exceptional circumstances, we generally will not consider arguments

raised for the first time on appeal, although we have discretion to do so. The Court may exercise

this discretion (1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue

while an appeal is pending; and (3) when the issue is purely one of law." (simplified)). The

counterclaim sufficiently described the claim. Federal pleading is not fact pleading and

Appellees were not required to list in their pleading all of the cases on which they based their

counterclaim. Such information was accessible to Appellant through discovery. Nor did

Appellant file a motion against the pleading, such as a motion to make more definite and certain

---

[5] The Court notes that the Oregon Court of Appeals has referenced the terms interchangeably and the use of "wrongful initiation" versus "wrongful use" is immaterial. *Compare Merrill v. A.R.G.*, 286 Or. App. 487, 497 (2017) (describing the five elements required for a "wrongful initiation of civil proceedings" claim), *with Checkley v. Boyd*, 170 Or. App. 721, 734 (2000) (describing the same five elements for a "wrongful use of civil proceedings" claim).

[6] Appellant also argues that Appellees' answer and counterclaims were not filed until 18 months after Appellant started the Adversary Proceeding and thus they were untimely and further proof of the Bankruptcy Court's favoritism to Appellees. As described in the procedural history, however, Appellees originally filed a motion to dismiss and Appellant then filed an amended complaint to which Appellees responded with another motion to dismiss and only after withdrawing that motion did Appellees file their answer and counterclaims. Appellees did not simply wait 18 months to answer Appellant's original complaint.

or a motion to dismiss for failure to state a claim. Additionally, as noted above, the Proofs of Claim filed more than a year before trial were accessible to Appellant and provided detailed information on which he could prepare his defense.

### 2. Termination in Appellees' Favor

Appellant next argues that the underlying cases that the Bankruptcy Court Judge found were terminated in Appellees favor were not terminated in their favor because the cases have not yet concluded. The Court disagrees with this assertion. The Court finds, however, that the 2015 Persolve Case that was dismissed for lack of subject matter jurisdiction did not involve a dismissal tending reflect on the innocence of Appellees or the merits of Appellant's case. *See Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc.*, 182 Or. App. 347, 352-55 (2002) (discussing Oregon law on favorable termination and describing that the termination of the case must be indicative of the innocence of the defendant or otherwise reflect on the merits of the case to support a claim); Barry A. Lindaahl, 4 *Modern Tort Law: Liability and Litigation*, § 39:7 (2d ed. 2022 update) ("The vast majority of courts take the position that in order to constitute a favorable termination, the termination must tend to indicate the innocence of the accused or must reflect on the merits, as opposed to termination on technical grounds or for procedural reasons. Thus, for example, a majority of courts take the position that termination on statute of limitations grounds is not a favorable termination. Similarly, courts have concluded that a favorable termination is not present when the underlying proceeding was dismissed based on standing or jurisdiction." (case citation footnotes omitted)). The Court thus reverses the Bankruptcy Court's acceptance of this case as a basis for Appellees' wrongful use of civil proceeding claim.

The Court also reverses the Bankruptcy Court's award of correlating damages from the Persolve case. As discussed further below, the Bankruptcy Court assigned a damages value to

each underlying case supporting the wrongful use of civil proceedings claim for each Appellee involved in that case. In first describing the Persolve case, the Bankruptcy Court explained it was brought against Victor and Anthony, among others. In awarding damages associated with the Persolve case, however, the Bankruptcy Court awarded $30,000 to Victor and $30,000 to Evye. The Court therefore strikes those damages amounts and does not strike any damages from Anthony.

## E.  Right to a Jury

Appellant argues that the Bankruptcy Court erred in denying Appellant's request for a jury trial, which Appellant first made by filing a written demand on April 16, 2018 (the same day he filed another unsuccessful attempt to withdraw his consent to the Bankruptcy Court's final jurisdiction) and again made at trial. If a party is entitled to a jury trial *and has not consented to final adjudication in the bankruptcy court*, then withdrawal of the reference at the time of trial may be required. *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990) (stating that "where a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate). Here, even if Appellant was entitled to a jury trial on the wrongful use of civil proceedings counterclaim, Appellant consented to the Bankruptcy Court's final adjudication. This Court has already affirmed the denial of the withdrawal of reference and found that Appellant failed to provide good cause to withdraw his consent. *Szanto*, 2019 WL 1932366, at *4-6. Thus, Appellant is not entitled to a jury trial.

## F.  Emotional Distress Findings

Appellant argues that Appellees' failure to allege a claim for intentional infliction of emotional distress, or to specifically request "emotional distress damages" in their counterclaim, renders the Bankruptcy Court's award of emotional distress damages *ultra vires*. Appellant also argues that the Bankruptcy Court erred in finding that Appellees suffered emotional distress.

For the latter argument, the Court does not find clear error with the factual findings of the Bankruptcy Court that Appellees suffered emotional distress from the repeated lawsuits filed by Appellant in numerous jurisdictions. The lawsuits made serious accusations against Appellees and have been ongoing for years. As found by Judge McKittrick, Appellees feel as though the justice system has been weaponized against them.

For Appellant's first argument, Appellant asserts that Oregon's statutory claim for wrongful use of civil proceedings does not permit emotional distress damages as a matter of law because it limits recovery only to the expense and other consequences of defending a lawsuit. Appellant misunderstands the Oregon statute. As explained by the Oregon Court of Appeals, the statutory text quoted by Appellant was added to overrule an Oregon Supreme Court case that *required* a plaintiff to prove that the plaintiff "suffered special injury *in addition to* the trouble, cost, and other consequences of defending against unfounded legal charges." *Lee v. Mitchell*, 152 Or. App. 159 (1998) (citing *O'Toole v. Franklin*, 279 Or. 513 (1977)) (emphasis added). IN response, Oregon's statute was amended to clarify that a plaintiff "shall not be required to plead or prove special injury beyond the expense and any other consequences normally associated with defending against unfounded legal claims." Or. Rev. Stat. § 31.230(1). This is not a limitation of damages, but an expansion of damages. Regardless of this statutory expansion, both before and after the amendment, emotional distress damages were allowed under Oregon law, as the Court in *Lee* explained:

> emotional distress is necessarily an element of damages in an action for wrongful initiation of a civil proceeding. It is a consequence of defending against an unfounded legal claim that is independent of the financial expense that the defense entails. Because it is an independent basis for damages, it is, in itself, sufficient to support the damages element of a claim.

*Id.* at 180. Because the Bankruptcy Court found that Appellees proved emotional distress at trial, they proved the damages element of their claim. The Bankruptcy Court found that they did not prove the other possible damages aspect of their claim, the costs of defending against litigation. Appellees, however, did not need to allege a claim for intentional infliction of emotional distress, nor did they need to plead "emotional distress damages" because under Oregon law emotional distress is "necessarily an element of damages" of their wrongful use of civil proceedings claim. The Bankruptcy Court did not err in awarding these damages.

## G. Denial of Stay

Appellant argues that the Bankruptcy Court erred in denying Appellant's repeated requests for a stay of the trial. Appellant contends that he had good cause for the stay and by forcing him to go to trial when he had medical issues the Bankruptcy Court prejudiced Appellant's ability to defend himself.

Appellant filed many motions to delay proceedings in the Main Bankruptcy Case and the Adversary Case on grounds that the Bankruptcy Court found not to be credible and for purposes of delay and harassment. On July 9, 2019, the Bankruptcy Court denied Appellant's motion to stay without prejudice to refile, and ordered that in any future motion Appellant must provide:

> independently verifiable evidence in the form of live third-party testimony or a signed and notarized affidavit from a treating medical professional supplying, at minimum, the following information:
>
> 1) Name of the treating medical professional;
>
> 2) Business address of the treating medical professional;
>
> 3) Business telephone of the treating medical professional;
>
> 4) Whether plaintiff is presently able to prepare for trial due to a medical condition and associated treatments;

> 5) Whether plaintiff is scheduled to undergo a medical procedure on July 10, 2019, the general severity of the procedure, and the estimated duration of the procedure;
>
> 6) Whether plaintiff is scheduled to be admitted to a medical facility on July 10, 2019, and for how long;
>
> 7) The estimated date on which plaintiff will be sufficiently recovered to resume trial preparation.

*Szanto v. Szanto*, Adv. Pro. No. 16-3114-pcm, (Bankr. D. Or. July 9, 2019, ECF 472). These requirements were reiterated in future orders denying Appellant's repeated stay requests. *See* App'x 181-185 (Bankruptcy Court July 31, 2019 Order denying Appellant's fourth motion to stay for failing to comply with the Bankruptcy Court's requirements).

Appellant continued to file motions requesting a stay and the Bankruptcy Court continued to find the motions did not comply with the Bankruptcy Court's directive regarding the required supporting evidence. The Court has reviewed the materials and finds that the Bankruptcy Court did not err in denying these motions.

## H.  The Basis of the Damages Award

Appellant argues that the amount of damages awarded was unreasonably speculative. The Bankruptcy Court, however, explained:

> In determining the appropriate amounts to award, the court has surveyed numerous Oregon cases awarding emotional distress damages, as well as considered the court's own experience in awarding such damages in cases such as contempt actions for violations of the automatic stay or the discharge injunction.
>
> * * *
>
> Taking into account the number of Prior Lawsuits filed against each of these defendants and their testimony about how those lawsuits have affected them, the appropriate amount of damages for emotional distress for each defendant is as follows.

App'x 32. The Bankruptcy Court then awarded an amount to each Appellee for whom damages

was awarded based on each case the Bankruptcy Court had found was properly a basis for the

wrongful use of civil proceedings claim as against that Appellee, with amounts tailored to each

underlying case. The Court finds that the damages awarded were not unreasonably speculative.

*See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 264 n. 20 (1978) (describing emotional distress

damages as "essentially subjective" and noting they may be proven by reference to injured

party's conduct and observations by others); *Passantino v. Johnson & Johnson Consumer Prod.,*

*Inc.*, 212 F.3d 493, 513 (9th Cir. 2000) (rejecting the contention that "emotional damages awards

must be supported by some kind of 'objective' evidence"); *Johnson v. Hale*, 13 F.3d 1351, 1352

(9th Cir. 1994) (noting that emotional damages may be awarded based on testimony alone or

appropriate inference from circumstances); Or. Rev. Stat. § 31.705(2)(b) (defining

"noneconomic damages" as "subjective, nonmonetary losses" including "pain, mental suffering,

emotional distress," among other noneconomic harms). As discussed above, however, the Court

reverses the damages association with the Persolve case.

## I. Finality of Judgment

Appellant argues that the Bankruptcy Court's judgment was not a final judgment because

Appellees assert additional claims that remain pending. This argument is based on the Proofs of

Claim submitted by Appellees relating to their wrongful use of civil proceedings counterclaim.

Appellees submitted Proofs of Claim in the Main Bankruptcy Case asserting their entitlement to

bankruptcy assets for their claim being litigated in the Adversary Proceeding. They assert in their

Proofs of Claim that they are entitled to damages for emotional distress and the costs of

defending the lawsuits, the same damages they claimed at trial on their wrongful use of civil

proceedings counterclaim. These are not new and additional claims waiting to be adjudicated in

the Adversary Proceeding, but identify the wrongful use of civil proceeding counterclaim that

has already been adjudicated in the Adversary Proceeding. Appellant's argument is without merit.

**J.  Monitoring by U.S. Marshal**

Appellant asserts that the Bankruptcy Court Judge concluded that Appellant posed a potential threat to Appellees and thus had a U.S. Marshal sit by Appellant during trial, accompany Appellant when he went to the restroom, and "periodically" go through Appellant's paperwork "likely looking for weapons." Appellant argues that the Marshal "constrained [Appellant's] freedom" and precluded him from effectively mounting a defense. Appellant fails to show how having a U.S. Marshal monitor his conduct denied Appellant's rights to a fair trial.

**K.  Nationwide Injunction**

Appellant argues that the Bankruptcy Court Judge did not have authority to issue a nationwide injunction barring Appellant from filing *pro se* certain proceedings against Appellees without the approval of the chief Bankruptcy Court Judge of the local district. Appellant asserts that the Bankruptcy Court Judge only has authority in the District of Oregon.

Appellees respond by quoting the Bankruptcy Court's discussion of its authority to enjoin abusive litigants so long as it provides Appellant with notice and enters a carefully and narrowly tailored injunction. The cited authorities, however, do not involve a nationwide pre-filing order. Neither party cites cases involving such orders.

There is no dispute that the Bankruptcy Court has the authority to enter a pre-filing order. The question is the *scope* of that order. The Ninth Circuit has not directly discussed whether a bankruptcy or district court has authority to require a pre-filing order outside the circuit. The Court, however, has surveyed many cases issuing broad pre-filing orders beyond the jurisdiction of the court itself.

The majority of courts issue broad pre-filing orders limited to the circuit in which the court sits, including the Ninth Circuit. *See, e.g.*, *Van Deelen v. City of Kansas City, Missouri*, 262 F. App'x 723, 724 (8th Cir. 2007); *Sieverding v. Colorado Bar Assn*, 469 F.3d 1340, 1344 (10th Cir. 2006); *Zahran v. Frankenmuth Mut. Ins. Co.*, 172 F.3d 54 (7th Cir. 1998); *U.S. ex rel. Verdone v. Cir. Ct. for Taylor Cnty.*, 73 F.3d 669, 674 (7th Cir. 1995); *Swig v. Dep't of Motor Vehicles*, 930 F.2d 920 (9th Cir. 1991) (unpub). As explained by the Tenth Circuit, courts are hesitant to extend filing restrictions to federal courts outside of their own circuit because "[i]t is not reasonable for a court in this Circuit to speak on behalf of courts in other circuits in the country; those courts are capable of taking appropriate action on their own." *Sieverding*, 469 F.3d at 1344.

The Second Circuit, however, upheld a district court's nationwide injunction when the vexatious and harassing behavior of the litigant was particularly egregious. *See In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). Other circuits upheld this injunction for years. *See, e.g.*, *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387-88 (11th Cir. 1993). The type of conduct included filing more than 250 lawsuits and suing "literally hundreds, if not thousands, of attorneys, judges, their spouses, court officials, and other human beings." *Id.* at 1386. Misconduct in another case that was found to support a nationwide injunction included "violating multiple court orders, repeatedly lying to the court, and pursuing a complaint with a false allegation." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 292 (2d Cir. 2021).

The Bankruptcy Court Judge here found six cases that supported Appellees' claim for wrongful use of civil proceedings, and this Court has eliminated one of those cases. In the five remaining case, the Bankruptcy Court Judge found that Appellant brought one claim without merit and entered a false affidavit to one court regarding service of process, abandoned another

case because it did not have any merit, provided falsified evidence to the court in a third case that was dismissed for failure to prosecute, had the fourth case dismissed for failure to state a claim, and the fifth case was one which was purportedly brought by Appellant's wife Susan Szanto but the Bankruptcy Court Judge found was actually brought by Appellant and it was dismissed for lack of prosecution. The Bankruptcy Court explained that Appellant is not the usual *pro se* litigant because he graduated from law school. Despite Appellant's legal knowledge, the Bankruptcy Court Judge found that Appellant initiated these lawsuits "without a reasonable belief that he would prevail" and that "he was often unconcerned with the legal merits of his case." App'x 23. The Bankruptcy Court also found that some of Appellant's allegations in the prior lawsuits were false and that some of Appellant's testimony during trial was false. The Bankruptcy Court further found that Appellant litigated the underlying cases with "malice" as that term is used in this claim because he had a primary purpose other than adjudicating the case. App'x 27.

Considering all of the Bankruptcy Court factual findings, which this Court does not disturb, the Court finds that this case does not rise to the level of egregiousness that supports a nationwide injunction, either at the district court or the bankruptcy court. The Bankruptcy Court Judge described vexatious and harassing behavior that supports a broad injunction "in any federal [district or bankruptcy] court in the Ninth Circuit" subject to the pre-filing conditions. *See Swig*, 930 F.2d at 920. The conduct, however, is similar to vexatious litigants targeting a group of individuals and not the overwhelming egregious conduct of a litigant like Martin-Trigona that supports a nationwide injunction.

Additionally, the Bankruptcy Court included in the injunction all Appellees, even those who were not named in any of the underlying lawsuits giving rise to the claim for wrongful use

of civil proceedings and whose claim for wrongful use of civil proceedings the Bankruptcy Court dismissed. "[T]he pre-filing order must be narrowly tailored to the vexatious litigant's wrongful behavior." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007). The only wrongful behavior identified by the Bankruptcy Court was directed at Victor Szanto, Evye Szanto, Anthony Szanto, and Barbara Szanto Alexander. Without a claim for wrongful use of civil proceeding or any demonstrated wrongful civil suits filed against them, the remaining Appellees and the estate of Appellant's parents have not shown a basis on which it is appropriate for this Court or the Bankruptcy Court to enter an injunction requiring pre-filing conditions before Appellant may file any suits against them.

The Court therefore modifies the Bankruptcy Court's injunction. The Court limits the scope of the injunction to all bankruptcy courts in the Ninth Circuit. The Court also limits the application of the injunction only to proceedings against Victor Szanto, Evye Szanto, Anthony Szanto, and Barbara Szanto Alexander.

Regarding the report and recommendation, the Court finds that the Bankruptcy Court can make such a report and recommendation to this Court. As noted by the Bankruptcy Court, Bankruptcy Rule 9033 is modelled after Rule 72 of the Federal Rules of Civil Procedure. The Bankruptcy Court complied with the necessary requirements of providing Appellant notice and making the requisite findings. *See Ringgold-Lockhart*, 761 F.3d at 1062. The Court, therefore, adopts the Bankruptcy Court's report and recommendation in part, adopting the proposed injunction as modified to only include the district courts in the Ninth Circuit and apply to the four Appellees the Bankruptcy Court found proved their claim for wrongful use of civil proceedings.

PAGE 28 – OPINION AND ORDER

## CONCLUSION

The Court AFFIRMS IN PART AND REVERSES IN PART the Memorandum Opinion and Judgment of the Bankruptcy Court. The Court directs the Bankruptcy Court to VACATE its Judgment and enter an Amended Judgment awarding Evye Szanto the amount of $75,000 and Victor Szanto the amount of $135,000 and modifying the injunction as set forth herein. The Court ADOPTS IN PART the Report and Recommendation and enters an injunction as set forth in this Opinion and Order. The Court DENIES Appellant's motion for a writ (ECF 46) and DENIES AS MOOT Appellant's motion for an extension of time to file a dispositive motion (ECF 45).

## INJUNCTION

Appellant Peter Szanto is ENJOINED from filing in any district court within the Ninth Circuit any new proceeding, complaint, or cause of action, in law or equity, against Victor Szanto, Evye Szanto, Anthony Szanto, or Barbara Szanto Alexander, unless:

1.    Peter Szanto is represented by legal counsel authorized to practice in the district (including by *pro hac vice* admission); or

2.    Peter Szanto has received pre-filing authorization from the chief judge of the district in which he seeks to file the proceeding.

**IT IS SO ORDERED**.

DATED this 19th day of August, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge